SHOLODGE, INC., Plaintiff–Appellant,

v.

TRAVELERS INDEMNITY COMPANY OF ILLINOIS and Bankers Standard Insurance Company, Defendants–Appellees.

No. 97–6165.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1998.

Decided Feb. 8, 1999.

Thor Y. Urness (argued and briefed), Boult, Cummings, Conners & Berry P.L.C., Nashville, TN, for Plaintiff–Appellant.

Randall C. Ferguson, Branstetter, Kilgore, Stranch & Jennings, Nashville, TN, Thomas Holden (briefed), William C. Morison–Knox (argued), Morison–Knox, Holden, Melendez, & Prough L.L.P., Walnut Creek, CA, for Defendant–Appellee Travelers Indemnity Company.

Michael E. Evans (argued and briefed), Evans, Todd & Floyd P.L.C., Nashville, TN, for Defendant–Appellee Bankers Standard Insurance Company.

Before: DAUGHTREY and MOORE, Circuit Judges; COHN,* District Judge.

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

DAUGHTREY, Circuit Judge.

In this diversity action regarding an insurance coverage dispute, the district court granted summary judgment to the defendants, Travelers Indemnity Co. and Bankers Standard Insurance Co. (CIGNA), who were general liability insurers for the plaintiff, ShoLodge, Inc. ShoLodge was sued by a third party, SF Hotel Company, for service mark infringement and in turn sued the insurers, claiming that they had a contractual obligation to defend and indemnify ShoLodge in the underlying action. On appeal, ShoLodge contests the district court's finding that the policies did not provide coverage for service mark infringement and also claims that the district court abused its discretion in limiting discovery. We find no reversible error and affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

ShoLodge, Inc., a Tennessee corporation, owns and operates hotels. One of its projects is a chain of all-suite hotels identified by the service mark "Sumner Suites." In an August 1995 letter, sent prior to the opening of the first Sumner Suites Hotel, SF Hotel Co., a Kansas corporation operating all-suite hotels under the service mark "Summerfield Suites," notified ShoLodge that it considered ShoLodge's use of the mark "Sumner Suites" to constitute service mark infringement. In its letter, SF Hotels requested that ShoLodge choose a different name for its new hotel chain and asserted that if ShoLodge did not comply with this request, SF Hotels would "take appropriate action to protect its rights." ShoLodge responded by indicating that it did not believe the mark "Sumner Suites" constituted potential trademark or service mark infringement of SF Hotel's mark. As a result, SF Hotels filed a service mark infringement suit against ShoLodge in federal court in Florida. ShoLodge then notified Travelers and CIGNA of the suit.

Both CIGNA and Travelers denied coverage. In their denial letters, the insurance companies took the position that service mark infringement suits are not covered by their general liability policies. By the time ShoLodge was informed of the denials of coverage, it had already retained counsel at its own expense to defend the case. Following a jury trial, judgment in the underlying suit was entered in favor of ShoLodge.

ShoLodge subsequently filed suit in Tennessee against Travelers and CIGNA, seeking a declaratory judgment that the insurers had a duty to defend and indemnify ShoLodge in the underlying suit involving SF Hotels. It argued that the "advertising injury" provisions of the contract provide coverage for service mark infringement claims. ShoLodge also brought claims for breach of contract and bad faith denial of coverage.

### DISCUSSION

The parties do not dispute the relevant facts and, therefore, we are presented only with a question of law regarding the construction of the Travelers and CIGNA policies. The relevant sections of the commercial general liability policies provided by Travelers and CIGNA are identical, stating that the insurers have a duty to defend and indemnify the insured for claims of " 'advertising injury' caused by an offense committed in the course of advertising [insured's] goods, products, or services." The contract defines "advertising injury" as follows:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title, or slogan.

ShoLodge argues that "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title, or slogan" are ambiguous terms that must therefore be interpreted in favor of the in-

sured, i.e., as including claims for service mark infringement. The defendants argue that these phrases are not ambiguous and clearly do not include service mark infringement.

■ Under Tennessee law, courts interpreting insurance contracts must look to the contract as a whole, *see Demontbreun v. CNA Ins. Cos.*, 822 S.W.2d 619, 621 (Tenn.Ct.App.1991), and should not apply a "forced, unnatural, or unreasonable construction." *Dixon v. Gunter*, 636 S.W.2d 437, 440 (Tenn. Ct.App.1982). Where there is no ambiguity, terms should be given their ordinary meaning, and neither party ought to be favored. *See In re Estate of Clement*, 220 Tenn. 114, 414 S.W.2d 644, 646 (Tenn.1967). Where the terms are ambiguous, however, such ambiguities are to be construed against the drafter. *See Grand Valley Lakes Property Owners Ass'n, Inc. v. Cary*, 897 S.W.2d 262, 267 (Tenn.Ct.App.1994). There is a strong presumption that an insurance contract is representative of the entire contract between the parties. *See Lawrenceburg v. Maryland Cas. Co.*, 16 Tenn.App. 238, 64 S.W.2d 69, 71 (1933). In sum, in the instant case, if the terms at issue are ambiguous, they must be construed in favor of plaintiff to include service mark infringement. If the terms at issue are unambiguous, however, and do not include service mark infringement, then the defendants must prevail.

In awarding summary judgment to the defendants, the district court relied on this court's opinion in *Advance Watch Co. Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795 (6th Cir.1996). The underlying claim in *Advance Watch* involved a suit by the A.T. Cross Company, which alleged that the plaintiff was manufacturing pens similar to Cross pens. As in the instant case, the underlying claim alleged violations of the Lanham Act as well as common law trademark infringement offenses and requested injunctive relief, various damages, and attorneys' fees. The policy clause examined in *Advance Watch* is identical to the clause in dispute in this case.

■ We conclude that the decision in *Advance Watch* is applicable here and defeats the argument made by ShoLodge that service mark infringement falls within the category of "misappropriation of advertising ideas or style of doing business." We specifically held in *Advance Watch* that "'misappropriation of advertising ideas or style of doing business' does not refer to a category or grouping of actionable conduct which includes trademark or trade dress infringement." *Advance Watch*, 99 F.3d at 802. *Advance Watch* is therefore directly on point in regard to plaintiff's argument regarding misappropriation. Moreover, we reject the plaintiff's argument that *Advance Watch* does not apply because that case was brought under *Michigan* law for *trade.dress* infringement, while this is an action under *Tennessee* law for *service mark* infringement. Although trade dress and service mark infringement are distinct claims, there is no functional distinction for the purpose of this litigation. Furthermore, as the district court noted, there is no material difference between Michigan and Tennessee law regarding principles of insurance contract interpretation.

■ ShoLodge also asserts that service mark infringement claims may fall within the language "infringement of copyright, title, or slogan." We cannot agree. Trademark infringement does not fall within the ordinary meaning of the phrase "infringement of copyright" because trademarks are not copyrightable. Nor does it fall within the ordinary meaning of the phrase "infringement of slogan," because a trademark or service mark is not a "slogan." Finally, we conclude that the term "title" is not ambiguous and that it does not include service marks, such as the name of a hotel or other establishment. In ordinary use, the word "title" generally refers to the non-copyrightable title of a book, film, or other literary or artistic work. See *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 429 (E.D.Pa.1994), *aff'd*, 60 F.3d 813 (3d Cir.1995) ("[T]he term 'title' refers to a distinctive name or designation used to identify a literary or artistic work.").

This reading of the ordinary meaning of the word "title" also makes the most sense in the context of the rest of the phrase "infringement of copyright, title, or slogan." The infringement of the title of an artistic

work, which is generally too short to be copyrighted, is directly related to the infringement of copyright law, which protects the artistic work itself. To include infringement of "names" generally within this phrase would be to improperly expand the subject matter of the clause. *See Travelers Ins. Co. v. Weatherford,* 520 S.W.2d 726, 728 (Tenn. 1975) ("[A]n insurer has a right to assume that the risk undertaken shall not be enlarged.").

The absence of any express reference to trademark or service mark infringement in the policy's definition of advertising injury further bolsters this interpretation. As noted in *Advance Watch,* trademark infringement is a common and "distinct category of actionable conduct." *Advance Watch,* 99 F.3d at 803. The only reasonable assumption is that "if Travelers [and CIGNA] had intended to provide coverage for such liability, [they] would have referred to it by name in the policy." *Id.* It is unreasonable to think that the insurers would have enumerated all of the other covered offenses, such as copyright, which are listed in the definition of "advertising injury," but chosen not to list the commonly recognized offense of trademark infringement, instead incorporating that offense under the language "infringement of copyright, title or slogan," which by its ordinary meaning does not include trademark infringement.

For these reasons, we hold that service mark infringement does not fall within either "misappropriation of advertising ideas or style of doing business" or "infringement of copyright, title, or slogan." Service mark infringement is therefore not covered under the Travelers or CIGNA policies, and the defendants had no obligation to defend or indemnify the plaintiff in regard to the underlying claim by SF Hotels.

■ In its remaining assignment of error, the plaintiff contends that the district court abused its discretion by affirming a discovery ruling by the magistrate judge, which involved a request for information concerning other cases in which CIGNA and Travelers may have provided coverage or a defense for trademark infringement under a similar commercial general liability policy. We disagree.

Even if this discovery had been granted, it would not have affected the issues presented to the court for summary judgment. The district court's grant of summary judgment, which we now affirm, was based on this court's ruling in *Advance Watch* and on principles of statutory construction. None of the information revealed in response to these interrogatories would have affected the analysis of the district court or of this court in regard to the application of those principles. According to Tennessee law, it is only "where the policy is ambiguous [that] the intent of the parties may be derived from extrinsic evidence outside the policy." *See Blue Diamond Coal Co. v. Holland–America Ins. Co.,* 671 S.W.2d 829, 833 (Tenn.1984). Furthermore, the requested discovery is not relevant to any other issues presented by defendants as alternative grounds for affirming the district court's judgment and is, therefore, immaterial to the grant of summary judgment.

■ ShoLodge also challenges the district court's refusal to reverse or modify that part of the magistrate judge's order declining plaintiff's request to depose representatives of the defendants. ShoLodge has not, however, put forth any compelling argument that expensive and time-consuming depositions would have provided information relevant to the disposition of the issues before the court on summary judgment. Hence, the district court did not abuse its discretion in declining to reverse or modify the order of the magistrate judge refusing to compel such depositions.

## CONCLUSION

For the reasons set out above, we **AFFIRM** the order of the district court granting summary judgment to the defendants.