**UNITED NATIONAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**SST FITNESS CORPORATION, Defendant–Appellant.**

No. 98–3270.

United States Court of Appeals, Sixth Circuit.

Argued March 9, 1999.

Decided and Filed June 28, 1999.

**448**

Clement J. DeMichelis, McCaslin, Imbus and McCaslin, Cincinnati, Ohio, James Christian Nielsen (argued and briefed), Wright, Robinson, Osthimer & Tatum, San Francisco, California, for Appellee.

Gerald W. Simmons (argued and briefed), Thompson, Hine & Flory, LLP, Cincinnati, Ohio, for Appellant.

Before: JONES, SUHRHEINRICH, and MOORE, Circuit Judges.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellee United National Insurance Co. is the commercial general liability insurer for defendant-appellant SST Fitness Corp. SST was sued by a third-party, Precise Exercise Equipment, Inc., for patent infringement, unfair competition and unjust enrichment. United National thereafter filed a motion for summary judgment, asserting that it had no duty to defend SST pursuant to the terms of the parties' insurance policy. The district court granted summary judgment to United National, agreeing that United National had no duty to defend under the terms of the insurance policy. SST now appeals. For the reasons stated herein, we **AFFIRM**.

### I.

Precise, a New Jersey corporation which markets and sells exercise equipment, invented and patented the "AB Trainer," an abdominal exercise machine. SST, an Ohio corporation, advertises, markets, and sells exercise equipment, including the "Smart Crunch" line of abdominal exercisers. In 1996, Precise filed a complaint in the United States District Court for the Central District of California, alleging, *inter alia,* that SST "advertises, markets, and sells products" which infringe two of Precise's patents, and that SST induced other companies into manufacturing, using, advertising and selling products which infringed these patents. Precise requested a declaration of willful infringement, an accounting of profits, injunctive relief and damages.

As a result of this litigation, SST tendered its defense to United National, which accepted the duty to defend, subject to a reservation of rights. United National thereafter filed a declaratory judgment action against SST, requesting a determination that it had no duty to defend, and a motion for summary judgment asserting

that, as a matter of law, it was entitled to such a finding. The district court referred the case to a magistrate judge, who heard oral argument, and thereafter recommended that United National's motion for summary judgment be granted. The district court adopted the magistrate judge's recommendation and granted United National's motion for summary judgment. SST filed this timely appeal.

## II.

### A.

■ We review the district court's order granting summary judgment *de novo. See Advance Watch Co., Ltd. v. Kemper Nat. Ins. Co.,* 99 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-movant, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996). The facts in this case are not disputed, and thus, we are "presented solely with a question of law concerning the correct construction" of the commercial general liability insurance policy. *Advance Watch,* 99 F.3d at 799.

### B.

Pursuant to the insurance policy, United National agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." J.A. at 63. The policy provides that "advertising injury" applies to "an offense committed in the course of advertising [SST's] goods, products or services," and is defined as "injury arising out of one or more of the following offenses":

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

J.A. at 63, 68. The term "personal injury" applies to injury arising from, *inter alia,* "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or "[o]ral or written publication of material that violates a person's right of privacy." J.A. at 70. The policy also lists various exclusions from coverage. The policy does not refer to trademark, trade dress or patent infringement in defining coverage or in setting forth the exclusions from coverage.

### C.

■ We are faced with an issue of first impression in this case, *i.e.,* whether allegations of patent infringement constitute "an offense committed in the course of advertising [an insured's] goods, products, or services" as defined by the insurance policy. On appeal, SST asserts that the policy language is ambiguous, Precise's complaint alleges offenses which constitute "advertising injury" or "personal injury" pursuant to the policy, and United National has a duty to defend. Conversely, United National contends that the policy language is unambiguous, Precise's allegations of patent infringement do not constitute "advertising injury" or "personal injury" as contemplated by the insurance policy, and it has no duty to defend SST in the underlying litigation.

■ The parties agree that Ohio law governs our interpretation of the insurance policy. Under Ohio law, the construction of an insurance contract is a matter of law for the court. In interpreting the insurance policy, "words and phrases used in an insurance policy must be given their natu-

ral and commonly accepted meaning." *United States Fidelity & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 80 Ohio St.3d 584, 687 N.E.2d 717, 719 (1997); *see also Watkins v. Brown,* 97 Ohio App.3d 160, 646 N.E.2d 485, 487 (1994) ("Contract terms are to be given their 'natural and usual' meaning if they are not defined in the policy, unless it is clear from the policy that the parties intended to use some specialized or technical definition."). Further, "[c]ourts are required to interpret the contract in such a way as to give effect to the intention of the parties at the time the agreement was entered into, as evidenced by the provisions of the contract....When a contract term is defined in the policy, that definition controls what the term means." *Watkins*, 646 N.E.2d at 487. Finally, "[b]ecause it is the insurance carrier that typically drafts the policy, where policy language is ambiguous, that language is to be construed in the way that is most favorable to the insured." *Id.; see also* 57 Ohio Jur.3d § 287 (1977)(liberal rule of construction in favor of insured does not apply where contract language is "unambiguous or where ambiguity can be resolved through ordinary rules of interpretation").

■ In construing a commercial general liability insurance policy, we are also "required to consider the allegations pleaded in the [underlying] action in the light of the coverage provisions and exclusions in the policy[.]" *Advance Watch*, 99 F.3d at 798. As previously stated, Precise alleged in its complaint that SST, among other things, "advertises" products which infringe Precise's patent. However, the insurance policy does not use "advertises" or "advertising" in the general sense, but details the four specific types of offenses that constitute "advertising injury." Consequently, regardless of whether Precise's complaint includes the term "advertises" in general, the complaint must allege that

SST specifically committed one of the four types of "advertising injury" specified in the policy before United National has a duty to defend.

### D.

■ We are substantially aided in our inquiry in this case by two of our prior decisions-*Advance Watch* and *ShoLodge, Inc. v. Travelers Indem. Co.*, 168 F.3d 256 (6th Cir.1999). In those cases, we discussed an insurer's duty to defend the insured where a third-party raised claims of trademark/trade dress infringement (*Advance Watch* ) and service mark infringement (*ShoLodge* ). Indeed, the commercial general liability policies at issue in *Advance Watch* and *ShoLodge* contained "advertising injury" language identical to that contained in SST's policy. *See Advance Watch*, 99 F.3d at 798–99; *ShoLodge*, 168 F.3d at 258–59. In *Advance Watch*, we reasoned that the phrases "advertising injury," "misappropriation," "advertising ideas," and "style of doing business" were not ambiguous terms because "[e]ach of these terms has either an established dictionary meaning or a meaning derived from case law." *Advance Watch*, 99 F.3d at 802. We concluded that, as a matter of law, the insurer had no duty to defend the insured in the underlying action because the "advertising injury" language in the policy did not provide coverage for the trademark/trade dress infringement offenses alleged in the third-party's complaint. *Id.* at 806. We reached a similar conclusion in *ShoLodge*. *See* 168 F.3d at 259–60. Thus, although the underlying litigation in this case involves assertions of patent infringement, not trademark/trade dress or service mark infringement, we find that due to the identical nature of the policy language in each of these cases, our findings of unambiguity in *Advance Watch* and *ShoLodge* are equally applicable here.[1]

---

1. SST devotes several pages of its brief to discussing the declaration of its expert, Pete Ligeros. However, because we find that the

language of the policy is unambiguous, we will not consider extrinsic sources in interpreting the insurance policy.

SST, however, contends that *Advance Watch* is not "controlling precedent" because the rules regarding the interpretation of insurance polices under Ohio law are different from the rules under Michigan law. We disagree, and find that SST's attempts to distinguish Ohio contract law from Michigan contract law are unavailing. Indeed, we rejected a similar claim by the insured in *ShoLodge* and concluded that "there is no material difference between Michigan and Tennessee law regarding principles of insurance contract interpretation." *Id.* at 259. Moreover, a review of the overarching principles of insurance contract interpretation under Michigan, Tennessee and Ohio law clearly shows otherwise, for in all relevant respects, each state's rules of contract interpretation are the same. *Compare Advance Watch,* 99 F.3d at 799–800 (terms in a contract are given their common and ordinary meaning; ambiguities are to be construed in favor of insured; and courts should give effect to all words and phrases in contract) *and ShoLodge,* 168 F.3d at 259 (same) *with Gomolka v. State Auto. Mut. Ins. Co.,* 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348–49 (1982)(same) *and* 57 Ohio Jur.3d §§ 274–292 (same).

Further, we emphasize that Precise's complaint alleges *patent* infringement, which is clearly less related to even a broad notion of "advertising" than are trademark and trade dress infringement. *See Advance Watch,* 99 F.3d at 806 ("[i]t is true that a trademark, unlike a patent, can be infringed in an advertisement"). We also find it significant that in addition to the guidance provided by *Advance Watch* and *ShoLodge,* the Ohio Court of Appeals has specifically addressed the issue in the context of a patent infringement suit. *See Synergystex Int'l, Inc. v. Mut. Ins. Co.,* No. 2290–M, 1994 WL 395626 (Ohio App. July 27, 1994)(interpreting "advertising injury" clause in commercial general liability policy). In *Synergystex,* the court concluded that the contract language was unambiguous, and "as a matter of law, the Policy does not provide coverage for [the underlying] claim of patent infringement against [the insured], nor do the allegations state a claim which is potentially or arguably within the policy coverage." *Id.* at *3. *Synergystex* further held that "in order for the insurer to be required to defend a patent infringement suit, the injury to the patent holder has to occur as the result of the alleged infringer's advertising." *Id.* ("[a] patent holder generally is injured by losing sales, profits or royalties to someone 'making, using or selling a patented invention' as set forth in [35 U.S.C. § 271], and not from advertising a product"). Although an unpublished opinion, we are persuaded that the Ohio Court of Appeals' pronouncement in *Synergystex* further undermines SST's argument that United National has a duty to defend.

Courts in other jurisdictions have reached conclusions similar to that reached in *Synergystex. See, e.g., Simply Fresh Fruit, Inc. v. Continental Ins. Co.,* 94 F.3d 1219, 1222–23 (9th Cir.1996)("patent infringement cannot occur in the course of an insured's advertising activities;" "[t]he gravamen of the patent infringement claim is the *use* alone;" "the *advertising activities* must *cause* the injury-not merely expose it")(emphasis in original); *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500, 1506 (9th Cir.1994) ("a patent is infringed by making, using, or selling a patented invention, not by advertising it"); *Gemmy Indus. Corp. v. Alliance Gen. Ins.,* No. 3–98–CV–0014–BD, 1998 WL 804698, at *3 (N.D.Tex. Nov.17, 1998) ("Patent infringement occurs when a person makes, uses, or sells a patented invention. Mere advertising, without more, cannot constitute actionable patent infringement.")(internal citations and quotations omitted).

We find the reasoning in these cases persuasive. In attempting to distinguish this line of cases, SST points out that unlike those cases, here, Precise specifically alleges that SST's advertising infringed its patent, and that SST induced others to do so. However, the mere fact that Pre-

cise uses the word "advertises" in its complaint is not dispositive, for we must still view that complaint in light of the language of the policy in determining whether United National has a duty to defend. Precise's complaint, at its essence, merely alleges patent infringement, not an "advertising injury" of the type addressed by the parties' commercial general liability insurance policy. Accordingly, we hold that patent infringement does not fall within the ambit of "advertising injury" as defined by the policy.[2]

### E.

■ SST also alleges that Precise's allegations of injury to the Precise name, business reputation and goodwill constitute "personal injury" as defined by the insurance policy. SST's argument on this point is unpersuasive. SST has failed to establish that the allegations in Precise's complaint constitute libel, slander, invasion of privacy or disparagement as contemplated by the "personal injury" provision of the insurance policy. Finally, SST asserts that United National had a duty to defend against Precise's unfair competition and unjust enrichment claims. SST has failed to point to any language in the policy which would impose upon United National a duty to defend against these two claims, and we decline to read such an obligation into the policy.

### III.

For the reasons set forth above, we find that, as a matter of law, United National has no duty to defend SST in the underlying litigation. Accordingly, we **AFFIRM** the judgment of the district court granting

United National's motion for summary judgment.

---

**2.** We also note that had the parties intended for "advertising injury" to apply to patent infringement, they easily could have included such language in the definition of the term. *See ShoLodge,* 168 F.3d at 260; *cf. Elan Pharm. v. Employers Ins. of Wausau,* 144 F.3d 1372, 1375 n. 3 (11th Cir.1998) (concluding that the insurer had a duty to defend the insured where the policy specifically stated that "advertising injury" applied to offenses committed by "infringement of copyright, title, trademark, *patent* or slogan")(emphasis in original). However, SST's policy states that "advertising injury" applies only to "infringement of copyright, title or slogan."