# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3802

_____

Callas Enterprises, Inc.,      *
     *
        Appellant,      *
     *   Appeal from the United States
    v.      *   District Court for the
     *   District of Minnesota
The Travelers Indemnity Company *
of America,      *
     *
        Appellee.      *

_____

Submitted: June 17, 1999

Filed: October 15, 1999

_____

Before MURPHY and MAGILL, Circuit Judges, and REASONER,[1] District
     Judge. _____

REASONER, District Judge.

This is an appeal from the district court's[2] order granting summary judgment in favor of Appellee, The Travelers Indemnity Company of America ("Travelers"), and against Appellant, Callas Enterprises, Inc. ("Callas"). Callas brought this action for declaratory relief with regard to Travelers' duty to defend and/or indemnify it in a lawsuit brought against it by Sbemco,

---

[1]The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable Paul A. Magnuson, Chief United States District Judge for the District of Minnesota.

Inc. ("Sbemco").[3] Callas argues that the district court erred in: (1) holding that the "knowledge of falsity" exclusion in the insurance policy at issue ("the Policy") applied to Sbemco's defamation claim against Callas; (2) holding that the "breach of contract" exclusion in the Policy applied to Sbemco's defamation claim against Callas; (3) not deciding the question of whether Sbemco's trademark infringement claim constituted an advertising injury for which the Policy would have provided coverage; (4) holding that Sbemco asserts no claim that would exist in the absence of the exclusive sales contract between Callas and Sbemco; and (5) holding that the "knowledge of falsity" exclusion applies because Sbemco's complaint alleges Callas acted with knowledge when it created false advertisements. Travelers avers that the district court erred in concluding that Callas's actions constituted advertising and that the alleged injury had the requisite causal connection with the advertising. We affirm.

## I. Background

Callas was sued in an underlying action by its contractual business partner, Sbemco. Sbemco manufactured custom safety floor matting, and Callas sold Sbemco's products through an exclusive right-to-sell agreement in a three-state area which included Minnesota. Pursuant to this agreement, Callas agreed that it would not sell floor matting manufactured by anyone but Sbemco.

In 1996, Sbemco filed suit against Callas alleging that Callas had breached their contract by selling non-Sbemco products to Sbemco customers. In this underlying action, Sbemco alleged that

_____

[3]See Part I ("Background") for the specific claims made by Sbemco against Callas in the underlying litigation.

Callas had engaged in deceptive trade practices in utilizing a "bait and switch" scheme in that Callas allegedly solicited business from Sbemco customers by showing them one sample of Sbemco's matting and then obtaining orders from these same customers for either non-Sbemco matting or for Sbemco matting of a different type or grade. Due to this conduct, Sbemco asserted nine claims against Callas in the underlying action: (1) breach of contract, (2) breach of contract-failure to pay, (3) accounts stated, (4) breach of fiduciary duty, (5) violation of Minnesota's Deceptive Trade Practices Act ("MDTPA"), (6) unfair competition, (7) violation of the Lanham Act, (8) defamation, and (9) tortious interference with a business relationship. In each count of its Complaint, Sbemco repeated and realleged all averments with respect to its exclusive agency contract with Callas and the breach of the parties' contract.

The parties do not contest that the Policy was in effect during the time period of the alleged breach of contract. Further, the Policy contains the following pertinent provisions as it relates to advertising injuries: "We will pay those sums that the insured becomes legally obligated to pay as damages because of... 'advertising injury'[4] to which this insurance applies. We will

---

[4]The contract states:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

have the right and duty to defend any 'suit' seeking those damages."  The Policy covers advertising injuries "caused by an offense committed in the course of advertising your goods, products, or services."  However, the Policy excludes coverage for advertising injuries "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity" and for injuries "arising out of [b]reach of contract, other than misappropriation of advertising ideas under an implied contract."

## II.  Standard of Review

This Court reviews a grant of summary judgment <u>de novo</u> and must apply the same standard as that applied by the district court. <u>First Bank of Marietta v. Hagge</u>, 161 F.3d 506, 509 (8th Cir. 1998). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that Travelers is entitled to judgment as a matter of law.  <u>Id</u>.

This Court will apply the substantive law of the forum state, Minnesota.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938).  We review <u>de novo</u> the district court's application of state law, and, if the state law is ambiguous, this Court predicts how the highest court of that state would resolve the issue.  <u>First Colony Life Ins. Co. v. Berube</u>, 130 F.3d 827, 829 (8th Cir. 1997).

## III.  Analysis

---

d.  Infringement of copyright, title, or slogan.

A.    "Breach of Contract" Exclusion


Under Minnesota law, an insurer's duty to defend a suit alleging an advertising injury is triggered if the advertising injury occurs during the course of the insured's advertising activities, if the injury arguably falls within the insurance policy's defined scope of advertising injury coverage, and if none of the policy's exclusions negates coverage. See Fluoroware, Inc. v. Chubb Group of Ins. Cos., 545 N.W.2d 678, 681 (Minn. Ct. App. 1996); Polaris Indus., L.P. v. Continental Ins. Co., 539 N.W.2d 619, 621 (Minn. Ct. App. 1995).  If any part of the underlying action is "arguably within the scope of coverage, the insurer must defend."  Fireman's Fund Ins. Co. v. Hartford Fire Ins. Co., 73 F.3d 811, 816 (8th Cir. 1996).  To determine whether an insurer does have a duty to defend, a court compares the allegations made in the underlying complaint with the relevant language of the insurance policy.  Ross v. Briggs and Morgan, 540 N.W.2d 845, 847 (Minn. 1995).


As to the various contentions raised by Callas on appeal, the Court finds that all are subsumed by the Policy exclusion which excludes coverage for injuries "arising out of breach of contract." The district court's treatment of this issue is both cogent and well-reasoned.    We  find  the  Policy's  language  is  clear, unambiguous,  and  broad  in  its  scope.    The  Supreme  Court  of Minnesota has previously interpreted insurance policy language of this nature.  In Associated Indep. Dealers, Inc. v. Mutual Service Ins. Co., 229 N.W.2d 516, 518 (1975)(citation omitted), that court concluded that this "arising out of" language meant "originating from," "having its origins in," "growing out of," or "flowing from."  Given such a broad interpretation of this "arising out of" language, we cannot read any of the counts alleged in Sbemco's

underlying complaint which flow from or have their origins in anything other than Callas' alleged breach of the exclusive agency contract, including those counts alleging violations of the MDTPA, violations of the Lanham Act, and defamation.

B.  Coverage for Trademark Infringement and Defamation Claims

Although we conclude that all causes of actions raised by Sbemco in its complaint in the underlying action are excluded because they arise out of breach of contract, other grounds also exist which we find would preclude coverage.  First, we find that the Policy's language would not have covered the allegations of trademark infringement under the Lanham Act, and second, we conclude that the Policy excluded coverage for Sbemco's defamation claim under the "knowledge of falsity" provision.

Callas argues that the district court erred by not determining whether Sbemco's trademark infringement claim constituted an advertising injury for which the Policy provided coverage. Although the district court did not address this issue in its opinion, we now hold that the Policy did not provide such coverage, and we adopt the persuasive reasoning of two recently decided cases from the Sixth Circuit Court of Appeals which explicated identical insurance policy language.  In <u>Advance Watch Co. v. Kemper Nat'l Ins. Co.</u>, 99 F.3d 795 (6th Cir. 1996), Cross Company, the manufacturer of Cross pens, sued Advance Watch over Advance Watch's sale of pens under a licensing agreement it had with Pierre Cardin. Cross Company alleged that the pens Advance Watch was selling under this licensing agreement were confusingly similar to Cross pens and infringed its trademark and its trade dress.  <u>Id</u>. at 797-98.  The Sixth Circuit concluded that no "advertising injury" coverage existed under the insurance policy Advance Watch had with its

-6-

insurer, Kemper, because the "misappropriation of advertising ideas or style of doing business" provision could not be so broadly construed as to include trademark or trade dress infringement. Id. at 802. The Court also concluded that another factor supported its decision: the absence of any reference to trademark or trade dress infringement within the insurance agreement. The court reasoned that "if the [insurer] had intended to provide coverage for such liability, [it] would have referred to it by name in the policy, as it did in the case of 'infringement of copyright, title, or slogan.'" Id. at 803 (citations omitted).

Subsequently, in ShoLodge, Inc. v. Travellers Indem. Co. of Illinois, 168 F.3d 256 (6th Cir. 1999), the Sixth Circuit further held that coverage did not exist for trademark infringement under the "infringement of copyright, title, or slogan" provision. Id. at 259. In ShoLodge, one hotel chain alleged that another chain had infringed its service mark. The insured, ShoLodge, averred that its insurer had a duty to defend and indemnify it in the underlying lawsuit pursuant to the terms of the policy therein at issue. ShoLodge contended that the language contained in the "misappropriation of advertising ideas" provision and the "infringement of copyright, title, or slogan" provision were ambiguous; therefore, it argued the policy should be construed in its favor to include coverage for claims such as service mark infringement. The Sixth Circuit disagreed, and we adopt its reasoning. After referring to the Advance Watch decision to foreclose the proposition that the "misappropriation of advertising ideas" provision extended coverage for service mark infringement, the court concluded that trademark and service mark infringement did not fall within the enumerated coverage of the "copyright, title, or slogan" provision. Id. at 259. The court found that trademarks and service marks were not "copyrightable," that they

-7-

were not "slogan[s]," and that they could not be considered "title[s]," as that term was not ambiguous. The court further noted that "the word 'title' generally refers to a non-copyrightable title of a book, film, or other literary or artistic work." Id. (citation omitted). As in Advance Watch, the ShoLodge court further bolstered its decision by noting the "absence of any express reference to trade mark or service mark infringement" in the insuring agreement. Id. at 260.

We find the Sixth Circuit's treatment of this policy language natural, reasonable, and unforced. Therefore, we also conclude that trademark infringement is not covered under the Policy herein at issue and that Travelers had no obligation to defend or indemnify Callas with regard to these claims.

Finally, with regard to the defamation claim, we hold that coverage would have been obviated under the "knowledge of falsity" exclusion even if the "breach of contract" exclusion had not precluded coverage. The Policy specifically provides that it does not apply to advertising injuries "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." As the district court was bound to compare the allegations made in the complaint to the Policy in order to determine whether or not a duty to defend existed, we find no error in its determination that Sbemco adequately alleged that Callas had acted with knowledge in making any defamatory statements and that the "knowledge of falsity" provision precluded coverage for any such remarks attributable to Callas.[5]

---

[5]The underlying complaint filed by Sbemco against Callas (A30-38) does not specifically allege that Callas knowingly made false oral or written publication of material. However, each of

-8-

The Court, having carefully reviewed the other contentions raised by Callas and Travelers on appeal, finds them to be non-meritorious. We find the district court did not err with regard to any of these additional arguments.

## VI. Conclusion

We conclude that summary judgment was properly entered for Travelers by the district court in this matter. Therefore, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

the nine claims for release begins with a sentence which re-alleges, *inter alia*, paragraph 1 of the complaint, also referred to as the "preliminary statement." In that statement, the following allegation is made:

> Moreover, Defendant engaged in deceptive trade prac-
> tices using "bait and switch tactics" in breaching its
> agreement with Sbemco – Defendant solicited Sbemco
> customers showing the customers samples of Sbemco
> custom safety floor matting and obtaining orders from
> these customers of Sbemco custom safety floor matting
> but actually selling the customers either non-Sbemco
> floor matting or a different type of Sbemco floor
> matting than that shown to the customer.

It would defy logic to interpret this language as alleging anything other than that Callas acted falsely and with knowledge of that falsity.