**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0510n.06

**Nos. 11-3027/3041**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

AMINA BENAHMED, Individually, and as
personal representative and/or next of friend of
the estate of Agdulgader Zbedah, Aya Zbedah,
Alimusa Zbedah, and Jannat Zbedah,

       **Plaintiff-Appellee/Cross-Appellant,**

v.

HOUSTON CASUALTY COMPANY,

       **Defendant-Appellant/Cross-Appellee.**

                               /

**FILED**
*May 16, 2012*
LEONARD GREEN, Clerk

**ON APPEAL FROM THE**
**UNITED STATES DISTRICT**
**COURT FOR THE NORTHERN**
**DISTRICT OF OHIO**

BEFORE:    NORRIS, CLAY, and GRIFFIN, Circuit Judges.

    **CLAY, Circuit Judge.**  This action arises between Plaintiff Amina Benahmed, as executor of her deceased husband's estate, and Defendant Houston Casualty Company. Defendant appeals the district court's order granting summary judgment in part to Plaintiff on her action to recover insurance damages from Defendant following her successful state action for wrongful death against her deceased husband's employers, Defendant's insureds. Plaintiff cross-appeals the order granting summary judgment in part to Defendant on Plaintiff's request for post-judgment interest. For the reasons that follow, we **AFFIRM** both orders.

## BACKGROUND

Abdulgader Zbedah was employed with TriCoastal Air, Inc. ("TriCoastal") and Grand Aire Express, Inc. ("Express") as a pilot. On February 8, 2006, he was piloting a Fairchild Swearingen SA226TC cargo plane from Ohio to Texas and was the plane's only occupant. The plane developed a mechanical problem and crashed in Tennessee, ultimately killing Zbedah. Following Zbedah's death, Plaintiff was appointed executor of his estate. Plaintiff filed a wrongful death action against TriCoastal and Express in the Lucas County Court of Common Pleas of Ohio.

TriCoastal and Express alleged that they were insureds of Defendant Houston Casualty Company under Policy Number 013047-014. Defendant initially represented TriCoastal and Express in the Lucas County lawsuit, but it eventually determined that Plaintiff's claim was not covered by its policy, issued a coverage denial letter, and subsequently terminated its representation of TriCoastal and Express. TriCoastal and Express hired independent counsel and jointly agreed to settle with Plaintiff. The settlement stipulated that TriCoastal, Express, and two other Grand Aire affiliates negligently maintained the cargo plane flown by Zbedah and that their negligence caused Zbedah's death. The companies also agreed to confess judgment of $5,278,753.00 in Plaintiff's favor, in exchange for Plaintiff's agreement to enforce judgment only against Defendant. On October 20, 2008, the Lucas County court entered judgment in Plaintiff's favor against TriCoastal and Express for the agreed-upon amount.

Plaintiff, acting as a judgment creditor, brought the present action against Defendant in federal district court on the basis of diversity jurisdiction. Plaintiff sought to enforce the stipulated damages amount against Defendant under Policy Number 013047-014.

The policy period of May 17, 2005 to May 17, 2006 encompasses the date of Zbedah's accident, February 8, 2006. The "named insureds" listed on the policy are TriCoastal, Grand Aire, Inc., Grand Aire Operations, Inc., Grand Aire Avionics, Inc., the estate of Tahir Cheema (owners of the Grand Aire companies), the officers, directors, and employees of the companies, and any subsidiary companies.[1]

The policy provides Coverages A through E and twelve "endorsements" (additional coverage policies). The provision of the policy at issue is Endorsement Four, for "Premises, Products-Completed Operations and Hangarkeepers Liability Coverage." Section Two of that endorsement provides:

> Aviation Products-Completed Operations Liability
> This Policy will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury and property damage caused by an occurrence and arising out of the Insured's aviation operations and/or the possession, use, consumption or handling of any goods or products manufactured, constructed, altered, repaired, serviced, treated, sold, supplied or distributed by the Named Insured or its employees, and then only after such goods or products have ceased to be in the possession or under the control of the Insured.

The limit of liability under Endorsement Four, Section Two is one million dollars, and the endorsement is subject to certain exclusions. The endorsement states:

> Exclusions
> The coverage provided by this Section [Endorsement Four, Section Two] is subject to the same exclusions as are applicable to Coverages B, C, D, and E of this Policy
> . . . .

---

[1]Express is not listed as a named insured, and Defendant strongly asserts that it cannot be required to pay for a non-insured's negligence. Regardless of the merits of Defendant's allegation, Defendant admits that TriCoastal is a named insured, and Defendant's liability under the policy is the same regardless of whether Express is also a named insured.

Thus, Endorsement Four, Section Two refers the reader to the policy's coverage exclusions.[2] The policy's general "Exclusions" section lists four exclusions that apply to all coverages A through E, which are not pertinent here. The section also offers four coverage-specific exclusions. Relevant to this appeal are two coverage-specific exclusions. Those provide:

EXCLUSIONS

This policy does not apply to:
. . . .

5. Under Coverage B, C, D and E

(a) to liability assumed by the Insured under any contract or agreement, but this exclusion 5.(a) does not apply to the assumption by the Named Insured of the liability of others for bodily injury or property damage in any written hold harmless agreement required by a governmental or military authority as a prerequisite to the use of an airport or an airport facility;

(b) (i) To claims directly or indirectly occasioned by, happening through or in: [*sic*] consequence of: (1) noise . . ., (2) pollution . . ., (3) electrical and electromagnetic interference, (4) interference with the use of property; unless caused by or resulting from a crash, fire, explosion or collision of an aircraft or a recorded in-flight emergency causing abnormal aircraft operation.

(ii) With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply and the Company shall not be required to defend: (1) claims excluded by paragraph (b) (i) above or (2) a claim or claims covered by the policy when combined with any claims excluded by paragraph (b)(i) above (referred to below as "Combined Claims").

(iii) In respect of any Combined Claims, the Company shall (subject to proof of loss and the limits of the policy) reimburse the Insured for that portion of the following items which may be allocated to a claim or claims covered by the policy: (1) damages awarded against the Insured and (2) defense fees and expenses incurred by the Insured.

(c) To claims in respect of bodily injury or property damage caused by or resulting from the use by the Insured or his agent of all forms of fertilizers, fungicides, defoliants, herbicides, hormone selective weed killers, pesticides,

---

[2]Additionally, there are several exclusions that apply only to Endorsement Four, Section Two, but are not relevant on appeal.

insecticides, and arsenical preparations or compounds or any other forms of chemicals.

6. Under Coverages B, C and D
(a) to any obligation for which the Insured or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, or under any similar law;
(b) to bodily injury to any employee of the Named Insured arising out of and in the course of his employment by such Named Insured; but this exclusion 6.(b) does not apply to liability assumed by the Named Insured under any governmental or military agreement referred to in Exclusions 5. (a) above;
(c) to bodily injury to any person who is a Named Insured . . . .

On the basis that her claim was covered under Endorsement Four, Section Two of the policy, Plaintiff filed a motion for summary judgment, requesting that Defendant pay the confessed Lucas County judgment and post-judgment interest. Defendant filed a cross-motion for summary judgment, arguing that no liability existed under its policy for the negligence of TriCoastal or Express or for their stipulated judgment. The district court granted partial summary judgment to Plaintiff, determining that Defendant was liable to Plaintiff, but only in the amount of one million dollars per the cap in the insurance agreement. The court also granted partial summary judgment to Defendant in denying Plaintiff's request for post-judgment interest. Defendant responded with a single motion under both Federal Rules of Civil Procedure Rule 59(e) to alter or amend judgment and Rule 60(b)(6) for relief from the district court's order, which the district court denied. Both parties timely cross-appealed the district court's summary judgment order.

## DISCUSSION

### I. Federal Jurisdiction and Standing to Sue

On appeal, Defendant argues, for the first time, that federal jurisdiction does not exist and that Plaintiff lacks standing to sue. Our jurisdiction and the justiciability of Plaintiff's claim are

threshold issues that we must always consider. However, we find that Defendant's contentions are meritless with respect to both matters.

### A. Subject Matter Jurisdiction

Although Defendant admits that diversity jurisdiction exists under 28 U.S.C. § 1332, Defendant argues that under Ohio Revised Code § 3929.06, Plaintiff was required to file her action against Defendant in the Lucas County Court of Common Pleas, which is the court that entered judgment in the underlying action.

Section 3929.06 governs rights of a judgment creditor and provides, in relevant part:

> If, within thirty days after the entry of the final judgment . . . the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, *the judgment creditor may file in the court that entered the final judgment* a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount.

Ohio Rev. Code Ann. § 3929.06(A)(2) (emphasis added). Despite Defendant's assertions, the word "may" within the statute indicates that a judgment creditor is merely permitted—not mandated—to file its action in the same court pronouncing judgment. Moreover, this Court has previously found federal jurisdiction to be proper under § 3929.06 in cases where a plaintiff obtained a judgment in state court and filed a diversity action in federal district court to recover damages against the insurer. *See Ridge v. Nat'l Am. Ins. Co.*, No. 93-4026, 1995 U.S. App. LEXIS 635, at *3–4 (6th Cir. Jan. 11, 1995) (per curiam) ("Complete diversity of citizenship exists between the parties, and this Court has previously recognized the propriety of bringing a diversity action based on section 3929.06."); *see also Ayers v. Kidney*, 333 F.2d 812, 814 (6th Cir. 1964); *Doepker v. Everest Indem. Ins. Co.*, No.

5:07CV2456, 2008 U.S. Dist. LEXIS 6015, at *13 (N.D. Ohio Jan. 16, 2008). We therefore find that our jurisdiction is not precluded by § 3929.06(A)(2).

### B. Standing to Sue

Defendant next argues that Plaintiff lacks standing to sue because Defendant is immune from liability. The doctrine of standing to sue is well ingrained in our jurisprudence; it requires that the plaintiff suffered actual injury that is traceable to the defendant's conduct and can be remedied by a judgment in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see Valley Forge Christian College v. Ams. United for Separation of Church & State*, 454 U.S. 464, 474–75 (1982) (outlining additional prudential requirements). Without standing, there is no justiciable case or controversy and this Court may not adjudicate the matter. *Lujan*, 504 U.S. at 561.

Defendant's arguments with respect to standing are frivolous. Defendant cites no authority for the proposition that a defendant's immunity precludes plaintiff's standing. Indeed, Defendant fails to realize that a defendant's alleged immunity from suit does not prevent a plaintiff from establishing standing, but instead affects the plaintiff's ability to recover. Courts frequently grant immunity to defendants without holding that the plaintiff lacks the threshold requirement of standing. Here, Plaintiff has been injured by the Defendant's refusal to pay damages to which Plaintiff believes she is entitled, and an order of this Court requiring Defendant to pay on its policy would indeed remedy Plaintiff's grievance. Plaintiff has standing to sue.

## II. Damages

We review *de novo* a district court's decision to grant summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is appropriate where "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). We view the facts and reasonable inferences in the light most favorable to the nonmoving party. *Holloway*, 220 F.3d at 772.

The district court found that Plaintiff was entitled to damages under TriCoastal's insurance policy with Defendant. Defendant argues first that it is immune from Plaintiff's claim; in the alternative, Defendant argues that Plaintiff's claim is not covered by the plain language of Endorsement Four, Section Two or is excluded from coverage under Exclusion 6 or the language of Coverage C. We address each of these matters in turn, below.

## A.      Defendant's Immunity

As an initial matter, we address Defendant's contention that it is immune from liability under Article II, Section 35 of the Ohio Constitution, Ohio Revised Code §§ 4123.74, 4123.82(A), 3929.06, and state and federal case law. Defendant contends that under the Ohio Constitution's Article II, Section 35, employers are immune from employees' negligence claims for workplace accidents; because the employers are immune, the employers' insurers are immune by extension. Furthermore, Defendant argues that under Ohio Revised Code § 4123.82, insurers are allegedly not permitted to issue policies that cover employee's negligence claims against employers. Therefore, according to Defendant, judgment against it is in contravention of Ohio constitutional and statutory law.

We may not reach the merits of Defendant's immunity argument, because Defendant failed to preserve that argument in the district court proceedings below. Although it raised the argument in its Answer, Defendant waived the immunity argument when it failed to raise the argument in its

motion for summary judgment. While Defendant did mention Article 35 and one related Ohio case in its motion, Defendant did so only in the context of informing the district court of its interpretation of the meaning of its own policy. Indeed, Defendant never even used the word "immunity" at that stage in the proceedings. After summary judgment was granted to Plaintiff on the damages issue, Defendant did raise the immunity argument in its motion under Rule 59(e) to alter or amend judgment and Rule 60(b)(6) for relief from judgment. Nonetheless, Defendant's attempt to revive its abandoned defense was futile, because "issues [are] waived when they are raised for the first time in motions requesting reconsideration or in replies to responses." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Moreover, because Defendant has also abandoned its appeal of the Rule 59 and Rule 60 motion by failing to argue that the denial of that motion was in error, we have no opportunity to consider the immunity argument in the context of the court's denial of that motion either.

Defendant asserts that it cannot be deemed to have abandoned the immunity defense, because 1) insurers may not waive immunity without express, written consent; 2) it has a right to per Ohio Revised Code § 3929.06(C)(1) to raise any defense that its insureds could have raised at trial; and 3) judgment against it would offend Ohio constitutional law. Each of these arguments fail. First, although it may be the case that we cannot give effect to a pre-trial waiver of an insurer's immunity without its written consent, *see Lubrizol Corp. v. Nat'l Union Fire Ins. Co.*, 200 F. App'x 555, 560–61 (6th Cir. 2006), waiver of immunity in that context is entirely distinct from waiver or failure to preserve an immunity argument in this Court for procedural purposes. *See Scottsdale Ins. Co.*, 513 F.3d at 552 (outlining the policy reasons for waiver and failure to preserve doctrines in the court

system). Second, although Defendant argues that it has a right per Ohio Revised Code § 3929.06(C)(1) to raise any defense that it could raise against its insureds—such as the immunity argument—that statute does not save defenses that the Defendant itself failed to properly preserve for appeal. Finally, our decision cannot be offensive to Ohio law when Ohio itself permits employers to waive their immunity by express writing. *See Lubrizol*, 200 F. App'x at 560.

### B. Liability Under the Policy

Under Ohio law, which the parties agree governs this case, the interpretation of insurance contract language is a question of law. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999); *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008. "A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 164 N.E.2d 745, 747 (Ohio 1960); *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001). "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989). "Ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991); *see Sunoco, Inc. v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). Policy exclusions must be clear to combat the general presumption that a claim is included in a policy. *Andersen*, 757 N.E.2d at 332 (citing *Home Indemn. Co. of N.Y. v. Plymouth*, 64 N.E.2d 248 (Ohio 1945)). "[I]n order to

defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen*, 757 N.E.2d at 332 (internal quotation marks and citation omitted).

### 1. Policy Coverage

Plaintiff brought her claim under Endorsement Four, Section Two of the insurance policy, which covers claims for:

> bodily injury and property damage caused by an occurrence and arising out of the Insured's aviation operations and/or the possession, use, consumption or handling of any goods or products manufactured, constructed, altered, repaired, serviced, treated, sold, supplied or distributed by the Named Insured or its employees, and then only after such goods or products have ceased to be in the possession or under the control of the Insured.

This provision thus offers protection for injuries "arising out of" two possible things: 1) "aviation operations" or 2) the "possession, use, consumption or handling or any goods or products" of the named insured.

Plaintiff contends that Zbedah's death arose out of the former circumstance—an occurrence related to "aviation operations." It is undisputed that Zbedah was piloting TriCoastal's plane and that, due to TriCoastal's negligent maintenance of the plane, the plane crashed and killed Zbedah while in Zbedah's control. The policy outlines the definition of "aviation operations" as inclusive of the following:

> [A]ll operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations. Aviation Operations include all operations necessary or incidental to aviation activities.

11

Under the second sentence of the definition, "all operations necessary or incidental to aviation activities" are said to be aviation operations. Surely, operations necessary to aviation activities includes piloting and maintaining the plane. Thus, the definition of "aviation operations" captures the activities at issue.

Defendant next asserts that even if "aviation operations" encompasses Plaintiff's claim, the final clause of the endorsement, that liability attaches "only after such goods or products have ceased to be in the possession or under the control of the Insured," excludes the claim because TriCoastal's plane remained in Zbedah's control at the time of the accident. Defendant misreads the plain language of the endorsement. We agree with the district court's conclusion that the language "after such goods or products have ceased to be in the possession or under the control of the Insured" explicitly applies only to the "goods or products" portion of the endorsement, not the "aviation operations portion." We therefore find that Plaintiff's claim is covered under Endorsement Four, Section Two.

### 2. Policy Exclusions

We next consider whether any exclusions bar Plaintiff's claim. Endorsement Four, Section Two states that it "is subject to the same exclusions as are applicable to Coverages B, C, D, and E of this Policy." The general exclusions section to the policy provides two potentially relevant exclusions: Exclusion Five for exclusions "Under Coverages B, C, D, and E" and Exclusion Six for exclusions "Under Coverages B, C, and D." The parties agree that Exclusion Five would not affect Plaintiff's claim, but the bar on reimbursing named insureds under Exclusion Six would exclude Plaintiff's claim. Also relevant is the language of Coverage C, which Defendant alleges contains

an applicable exclusion. Plaintiff does not concede that the Coverage C language would preclude recovery.

The parties dispute the meaning of the Endorsement Four, Section Two language—that the endorsement "is subject to the same exclusions as are applicable to Coverages B, C, D, and E of this Policy"—in terms of which exclusions are referenced. Defendant argues that the language means that any exclusion that applies jointly or separately to Coverages B, or C, or D, or E will also apply to the endorsement. Plaintiff, however, reads the endorsement clause as actually referring to the heading of Exclusion Five. Alternatively, Plaintiff reads the endorsement language to mean that it has the same exclusions as are applicable to all Coverages B, and C, and D, and E; under this interpretation, the general Exclusion Five would still be the only applicable exclusion.

We agree that there are several ways of interpreting the phrase, "the same exclusions as are applicable to Coverages B, C, D, and E." That phrase could mean that only exclusions that apply to all coverages B, C, D, and E apply to the endorsement; that any exclusion that applies to those coverages separately could apply to the endorsement; or that the phrase is referencing the headings of the general policy exclusions and thus only Exclusion Five applies. None of these interpretations is blatantly incorrect and all are plausible. Under Ohio law, ambiguity in an insurance policy is construed against the drafter. *See Andersen*, 757 N.E.2d at 332; *Lane*, 543 N.E.2d at 490. Because the endorsement language referencing the policy's exclusions is ambiguous, we construe the language in Plaintiff's favor and find that only the exclusions listed in general Exclusion 5 apply. And because Exclusion 5 does not preclude Plaintiff's recovery under the policy, Defendant remains liable for the judgment.

## III.    Post-Judgment Interest

Finally, Plaintiff contends that a provision in the insurance policy also entitles her to post-judgment interest on the entirety of the Lucas County judgment.  The applicable policy language provides that, "[w]ith respect to Coverages B, C, and D," Defendant shall have a duty to defend suits seeking damages for bodily injury and shall pay "all interest on the entire amount of any judgment therein which accrues after entry of the judgment."  The provision thus expressly states that it only applies to Coverages B, C, and D.  Plaintiff, however, brought her claim under Endorsement Four of the policy, not one of the three applicable coverages.  Endorsement Four does not cross-reference that provision or provide a similar provision of its own.  We therefore find that Plaintiff is not entitled to post-judgment interest.

Plaintiff next argues that although she did not bring her claim under one of the applicable coverages, she *could have* brought her claim under Coverage B and thus is entitled to the interest by implication.  This argument is obviously flawed because Plaintiff is not entitled to the benefits of a particular coverage if she did not in fact bring her claim under that coverage.

Because we affirm the district court's denial of Plaintiff's request for post-judgment interest, it is unnecessary for us to decide whether Plaintiff's request for post-judgment interest was untimely.

### CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's order granting partial summary judgment to Plaintiff on the issue of damages and **AFFIRM** the district court's order granting partial summary judgment to Defendant on the issue of post-judgment interest.