*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0093P (6th Cir.)
File Name:  02a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RONALD I. WEISS, Executor
and Trustee for Plaintiff
Walter L. Abt,
          *Plaintiff-Appellee/*
          *Cross-Appellant,*

          *v.*

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
          *Defendant-Appellant/*
          *Cross-Appellee.*

Nos. 00-3267/3297

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 92-01747—Lesley Brooks Wells, District Judge.

Argued:  October 31, 2001

Decided and Filed:  March 18, 2002

Before:  KEITH, KENNEDY, and BATCHELDER, Circuit
Judges.

1

------

## COUNSEL

**ARGUED:** Felix J. Gora, RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellant. Richard S. Mitchell, ROETZEL & ANDRESS, Cleveland, Ohio, for Appellee. **ON BRIEF:** Felix J. Gora, RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellant. Richard S. Mitchell, ROETZEL & ANDRESS, Cleveland, Ohio, for Appellee.

------

## OPINION

------

ALICE M. BATCHELDER, Circuit Judge. St. Paul Fire and Marine Insurance Company ("St. Paul") appeals the judgment of the district court holding that it owed its insured, Mor-Flo Industries, Inc. ("Mor-Flo"), a duty to defend in a patent infringement action and that it was liable for the attorney's fees and costs incurred by Mor-Flo in defending that action. Ronald Weiss appeals the district court's order vacating Weiss's default judgment against St. Paul and the district court's judgment that St. Paul had no duty to indemnify Mor-Flo for the judgment against it in the patent infringement action. We will affirm the order vacating the default judgment and the judgment in favor of St. Paul on the issue of indemnification. We will reverse the district court's judgment in favor of Mor-Flo on the issue of St. Paul's duty to defend and the award of fees and costs.

## I. Procedural Background

St. Paul provided liability coverage for Mor-Flo, a manufacturer of water heaters. In 1984, Mor-Flo was sued for patent infringement and St. Paul declined to defend, contending that it had no duty either to defend or indemnify. Mor-Flo lost the patent infringement suit and paid the patent

## C. Summary Judgment on Duty to Indemnify

Because the St. Paul policies do not arguably cover the patent infringement claims, they cannot be held to require indemnification on those claims. We therefore affirm the district court's determination that St. Paul had no duty to indemnify Mor-Flo.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court vacating the default judgment against St. Paul; we **AFFIRM** the portion of the judgment holding that the St. Paul insurance policies did not cover claims for patent infringement, and we **REVERSE** the portion of the judgment holding that St. Paul had a duty to defend Mor-Flo in the patent infringement litigation and awarding costs and attorney's fees.

In *Advance Watch Co., Ltd.*, 99 F.3d at 799, a case involving claims of trademark infringement rather than patent infringement, we found neither coverage nor a duty to defend. We held that the meaning of "advertising injury" was unambiguous because the terms in question had "either an established dictionary meaning or a meaning derived from case law." *Id.* at 802. We distinguished an advertising injury from trademark infringement in numerous ways. First, we noted that a trademark claim, unlike an advertising injury, does not depend on harmful speech, but instead is concerned solely with the design or appearance of a product. *Id.* at 803. Second, we found that because trademark infringement is commonly understood to be a distinct form of actionable conduct, the absence of an explicit reference to trademark infringement in a context in which such a reference would be expected pointed towards an exclusion of trademark litigation from coverage. *Id.* Finally, we found that the claimant had failed to allege a nexus between his trademark infringement claim and any advertising activity at all. *Id.* at 806.

We hold that the district court erred in concluding that because of the split in legal authority in 1984 in jurisdictions outside of Ohio, there was no way to determine what construction of the terms in question the Ohio courts would give. The plain meaning of an "advertising injury" defined in the policy as "piracy" and "unfair competition" does not arguably cover the losses due to patent litigation, and therefore St. Paul had no duty to defend Mor-Flo in the patent infringement litigation. And because we have held that St. Paul had no duty to defend, we will reverse the district court's judgment awarding attorney's fees and costs. The district court, sitting in diversity, was bound to apply the substantive law of Ohio. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Ohio law does not permit a court to award attorney's fees in a declaratory judgment action except with explicit statutory authorization and to the prevailing party. Ohio Rev. Code Ann. § 2721.16; *Sturt v. Grange Mut. Cas. Co.,* 761 N.E.2d 1108, 1113 (Ohio Ct. App. 2001).

holder $9,925,638.00 in damages and $2,250,158.24 in fees and costs. In 1992, Mor-Flo was sold and its former chairman, Walter L. Abt, purchased the rights to Mor-Flo's duty-to-defend claim against St. Paul for $1000.00.

Abt filed this action against St. Paul, seeking a declaratory judgment that St. Paul had a duty to defend Mor-Flo in the patent infringement action and a duty to indemnify Mor-Flo for the judgment against it in that action. Due to the failure of St. Paul and its outside counsel to file an answer, a default judgment was entered against St. Paul. The district court granted St. Paul's motion to vacate the default judgment pursuant to Rule 60(b), and both parties then moved for summary judgment. The district court held that St. Paul had a duty to defend Mor-Flo in the patent litigation but did not have a duty to indemnify. The district court further found that, having breached its duty to defend Mor-Flo in the patent litigation suit, St. Paul was liable for the reasonable attorney's fees and costs incurred by Mor-Flo in defending that action. The court awarded prejudgment interest from the date of the conclusion of the patent litigation. This timely appeal followed.[1]

## II. Facts

In 1979, State Industries, a manufacturer of water heaters, applied for a patent to cover its new process for making water heaters that used foam insulation as opposed to the prior industry standard of fiber glass insulation. Shortly thereafter, Mor-Flo developed its own foam-insulated water heater, using a slight variation of State's design, and by 1981, Mor-Flo was producing foam insulated heaters. By 1984, Mor-Flo was one of the largest water heater manufacturers in the nation.

---

[1]After the notices of appeal were filed, Walter Abt died and Ronald Weiss, Abt's executor and trustee, was substituted as the plaintiff-appellee, cross-appellant. For ease of reference, we will continue to refer to the plaintiff as Abt.

On May 8, 1984, the Patent Office granted State a patent on State's method of manufacturing foam insulated heaters. State immediately sued Mor-Flo for patent infringement. Relying on the advice of patent counsel, Mor-Flo contested the suit and continued to produce foam insulated water heaters. The district court ruled that Mor-Flo had infringed State's patent and that judgment was affirmed. The district court awarded State approximately $8.7 million in damages. By January 26, 1990, Mor-Flo had paid State a total of $9,925,638.00 in damages and had also paid $2,250,158.24 in fees and costs.

When the patent litigation began, Mor-Flo had three insurance policies through St. Paul. The Comprehensive General Liability plan provided coverage for "advertising injury claims resulting from your business activities." Advertising injury was defined as "Piracy; Unfair competition; Infringement of copyright, title or slogan" that resulted in interference with another's rights. Advertising claims that were the result of "infringement of trademark, service mark or trade name" were excluded from coverage. Another policy, the Umbrella Excess Liability plan, covered essentially the same activities in relation to advertising injuries. The third policy was a Director's and Officer's Liability plan.

In May of 1985, Mor-Flo requested that St. Paul defend the patent action and indemnify any losses. The St. Paul adjuster assigned to determine whether there was coverage inexplicably (even according to St. Paul itself) limited his review to Mor-Flo's Director's and Officer's Liability plan. Based on its review of only the Director's and Officer's Liability plan, St. Paul denied coverage.

Walter Abt was the chairman of the board, chief executive officer and majority shareholder of Mor-Flo. In February, 1991, Abt read an article in the *Wall Street Journal* that suggested that advertising injury provisions in comprehensive insurance plans such as Mor-Flo's covered patent

omitted) ("The Supreme Court of Ohio has held that '[w]hen the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language.' If we were to accept plaintiffs' argument that a contract provision is ambiguous *as a matter of law* because other jurisdictions have chosen to apply a provision differently, then we would be rejecting a well-settled Ohio rule of construction to apply the plain language of the contract where that language is clear and unambiguous.").

Our view that the plain meaning of the contract terms at issue here precludes a finding that claims for patent infringement are covered, arguably or otherwise, by the St. Paul policies is supported, however, by both Ohio and Sixth Circuit case law. Prior to our decision in *Herman Miller*, the Ninth District Court of Appeals of Ohio gave a restrictive interpretation to the term "advertising injury" in the case of *Synergystex Int'l, Inc. v. Motorists Mut. Ins.*, No. 2290-M, 1994 WL 395626 (Ohio Ct. App. July 27, 1994) (unpublished). In *Synergystex* the court found that the terms at issue—"Infringement of copyright, title or slogan"—were not ambiguous and without the prerequisite pleading of an injury caused by advertising, no coverage of a patent infringement claim was arguable. *Id.* at *3.

This circuit addressed the question of whether patent infringement is covered as an advertising injury in *United Nat'l Ins. Co.*, 182 F.3d at 449. Following the lead of *Synergystex*, we held that an advertising injury does not occur during the course of patent infringement unless the injury results directly from advertising. *Id.* at 450-51. Since SST only alleged an advertising injury that was in reality a patent infringement claim, the court found that there was no duty to defend. *Id.* at 451. Similarly, the complaint filed by State Industries against Mor-Flo—the complaint as to which Abt now claims St. Paul was obligated to provide Mor-Flo a defense—does not allege any injury directly resulting from advertising; rather, that complaint alleges patent infringement.

was required to defend it in a patent infringement action. *Id.* We held that patent infringement was not *arguably* covered as an "advertising injury" under either "piracy" or "unfair competition." *Id.* at 455. We conceded that piracy and unfair competition, in the abstract, might be construed broadly as encompassing patent infringement, but we concluded that since the policy specifically covered copyright infringement as an advertising injury, the omission of any reference to patent infringement as an advertising injury was an indication of the parties' intent. *Id.* The natural usage of the terms "piracy" and "patent infringement" also counseled us to assume that if the parties had desired to include coverage for patent infringement they would have included it specifically. *Id.* The court found that the terms of the policy did not encompass patent infringement and Travelers did not have an "arguable" duty to defend.

It is true that the *Herman Miller* case was decided years after the conclusion of the underlying patent litigation at issue here. But in that case we did not look to other jurisdictions to determine whether similar terms in insurance policies had been interpreted differently there. Our use in *Herman Miller* of traditional methods of contract interpretation to determine the plain meaning of the policy's terms bolsters St. Paul's position here. We think the *Herman Miller* approach is the correct one, and we conclude that the terms of the insurance contract at issue here were not made ambiguous by the lack of an authoritative or controlling legal interpretation of those terms. Furthermore, we have held that the approach advocated by Abt—that a contract provision is ambiguous as a matter of law if other jurisdictions have conflicting interpretations of similar provisions—is not the law in Ohio. *Park-Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1220 (6th Cir. 1992) (italics in original) (internal citations

1999) (rejecting an attempt by a party to distinguish Ohio and Michigan law finding that "each state's rules of contract interpretation are the same").

infringement litigation. Armed with this information, Abt submitted a claim to St. Paul. On April 25, 1991, St. Paul began its investigation into possible coverage for legal fees expended by Mor-Flo in the patent litigation. In July, Jacqueline McCroskey, the St. Paul claim representative at the Cleveland office assigned to Mor-Flo's claim, established an expense reserve of $1 million based on her belief that there was a fifty percent likelihood that St. Paul could be found liable for the approximately $2 million in legal fees accrued by Mor-Flo in defending the patent litigation. On September 27, 1991, St. Paul received an opinion from outside counsel that St. Paul had no duty to defend, and on October 2, 1991, McCroskey recommended that St. Paul issue a letter to Mor-Flo denying any duty to defend. On November 7, 1991, McCroskey sent a denial letter to Mor-Flo. Throughout this period, St. Paul's counsel and counsel for Mor-Flo corresponded by letter and telephone with regard to whether the St. Paul policies provided coverage for the patent infringement claim or required St. Paul to defend the patent litigation.

Mor-Flo was sold to SABH (US), Inc., during the spring of 1992, and Abt purchased the rights to Mor-Flo's duty-to-defend claim against St. Paul for $1000. Abt filed this declaratory judgment action on August 25, 1992. By August 27, 1992, St. Paul had received the complaint through certified mail. On September 2, 1992, St. Paul sent the complaint to Weston (St. Paul's counsel) which received the complaint in its docket department the following day. Dennis Kolibab, a docket clerk, testified that pursuant to Weston's policy he called the district court clerk asking whether the return of service had been filed. After finding that the return had not yet been filed, he docketed an answer date for September 14, twenty days from the date the complaint was filed. The return of service was filed on September 9, 1992.

James Barone, another docket clerk at Weston, stated in his affidavit that on September 12 or 13, 1992,[2] he called the district court clerk to ascertain whether the return was filed, and again was informed that the return had not yet been filed. Following Weston policy, Barone moved the answer date forward to September 24, 1992. This date was thirty days after the complaint was filed.

No answer to the complaint was filed by the answer date of September 16. Two days later a default was entered on the court's docket. On September 22, 1992, Abt filed an affidavit in support of a default judgment in which he alleged damages due to him of approximately fifteen million dollars. Around that date, Barone again telephoned the district court clerk and inquired about the status of the return of service and was again told that no return had yet been filed. (Apparently the court clerk did not mention that a default had been entered in the case.) Barone then noted a new, later, answer date of October 4, 1992. This date was forty days after the filing of the complaint.

The court entered a default judgment on September 28, 1992. Weston's internal docket sheet indicated that on October 4, someone—Weston has not been able to determine who—postponed the answer date to October 18, 1992. Finally, on October 7, 1992, Weston learned of the default. The following day St. Paul filed a motion to vacate the default judgment pursuant to Federal Rule of Civil Procedure 60(b)(1) and (3).

The district court granted the motion finding that Abt was not prejudiced by the vacating of the judgment, St. Paul had a meritorious defense, there was no culpable conduct on St. Paul's behalf, and Abt's counsel knew of, but did not notify, St. Paul's counsel before obtaining the judgment. Each party

---

[2] Barone's recollection is flawed because September 12 was Saturday and the 13th was Sunday and on neither day was the clerk's office open.

Ohio legal opinion was divided in 1984 over whether a patent infringement claim was covered as an "advertising injury;" in essence, Abt agues that this division of opinion makes the coverage "arguable" under *Willoughby Hills*.

In *Willoughby Hills* the Supreme Court of Ohio addressed the changes wrought by Ohio's use of notice-pleading and expanded upon the earlier rule that a duty to defend may arise solely from the pleadings. Since under notice-pleading the duty to defend could arise at some point subsequent to the filing of the complaint, the court adopted the rule that when the pleadings "state a claim which is potentially or *arguably* within the policy coverage . . . the insurer must accept the defense of the claim." *Id.* at 558 (emphasis added). We agree that *Willoughby Hills* controls here, and we think that case requires that we determine from the plain meaning of the contract terms whether the occurrence is arguably covered by the insurance contract.

In Ohio, normal contract rules apply to the interpretation of insurance contracts. *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). The court determines whether contract terms are ambiguous. *United Nat'l Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447, 449 (6th Cir. 1999). A term is ambiguous if it is reasonably susceptible of more than one meaning. *King*, 519 N.E.2d at 1383. If the terms of the contract are unambiguous the court determines the meaning of the contract. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995). The court is to give the terms of the contract their plain and natural meaning. *King*, 519 N.E. 2d at 1383.

This court faced a situation similar to the one at hand in *Herman Miller*, 162 F.3d at 454, a case arising under Michigan law.[3] There, Herman Miller claimed that Travelers

---

[3] Because Ohio and Michigan follow the same rules of contract construction, the *Herman Miller* analysis is applicable in this case. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 451 (6th Cir.

lawsuit, the entry of default or the default judgment. This is clearly not one of those "most extreme cases" where the default judgment is the result of deliberate, willful, conduct. *United Coin Meter Co., Inc.*, 705 F.2d at 845. Instead, this case presents an appropriate instance for the district court to exercise its discretion to "achieve substantial justice" through the liberal application of Rule 60(b). *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980). We hold that the district court did not abuse its discretion in vacating the default judgment.

**B.  Summary Judgment on the Duty to Defend**

We review a district court's grant of summary judgment de novo. *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799 (6th Cir. 1996). Summary judgment is appropriate if the evidence, taken in the light most favorable to the non-moving party, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). Here, the facts regarding the issue of a duty to defend are not in dispute.

St. Paul and Abt agree that *Willoughby Hills*, 459 N.E.2d at 555, controls this case. St. Paul claims that *Willoughby Hills* requires a factual analysis of the pleadings at the time the case was initiated to determine whether the facts alleged stated a claim that was "arguably" covered by the insurance policy. St. Paul further argues that Ohio courts have found, since 1984 when the underlying patent suit was filed, that a patent infringement claim is not an "advertising injury" within the meaning of the policy in question, and this fact mandates the finding that a patent suit is not "arguably" an "advertising injury."

Abt, on the other hand, contends that this court must look to the legal landscape when the patent suit was initiated to determine whether arguably there was coverage, and that St. Paul's reliance on cases decided after the patent litigation began is misplaced. Abt argues that in jurisdictions other than

then moved for summary judgment. The district court held that at the time the patent suit was filed in 1984 it was arguable whether Mor-Flo's policies covered its claim, and therefore, under *Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555 (Ohio 1984), St. Paul had a duty to defend.

Next, relying on *Herman Miller, Inc. v. Travelers Indem. Co.*, 162 F.3d 454 (6th Cir. 1998), the court ruled that St. Paul did not have a duty to indemnify Mor-Flo because the plain meaning of "piracy" and "unfair competition" did not include a claim of patent infringement. On the issue of damages the district court found that, based on its breach of the duty to defend, St. Paul was liable to Mor-Flo for reasonable attorney's fees and costs incurred in the underlying patent infringement action and in this declaratory judgment action and for pre-judgment interest at Ohio's statutory rate from November 14, 1991, the date the parties stipulated as the conclusion of the underlying patent litigation.

### III.  Analysis

**A.  The Default Judgment**

We review for abuse of discretion the district court's granting of a motion to vacate a default judgment. *Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co.*, 58 F.3d 204, 207 (6th Cir. 1995). We review a motion to vacate a default judgment under the stricter standards of Rule 60(b) rather than under the more lax standards governing a motion to vacate the entry of default under Rule 55(c). *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) ("But once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation. Rule 60(b) reflects this public policy by requiring greater specificity from a moving party before a court will set aside a default judgment.").

The Federal Rules of Civil Procedure require a defendant to serve an answer within twenty days of being served with a summons and complaint. Fed. R. Civ. P. 12(a)(1)(A). Rule 55 permits the clerk to enter a default when a party fails to defend an action as required. The court may then enter a default judgment. Fed. R. Civ. P. 55(b)(1). A party against whom a default judgment has been entered may petition the court to set aside the default judgment under Rules 55(c) and 60(b) for good cause, and upon a showing of mistake, or any other just reason.

The seminal case in this circuit on Rule 60(b) motions to vacate default judgments is *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). In *United Coin Meter* we noted that Rule 60(b) is to be applied "equitably and liberally" in considering motions to vacate defaults and default judgments, *id.* at 845, and that the same factors that control a motion to vacate an entry of default under Rule 55(c) are also applicable in determining whether to vacate a default judgment: (1) whether the opposing party would be prejudiced; (2) whether the proponent had a meritorious claim or defense; and (3) whether the proponent's culpable conduct led to the default. *Id.*

In *Waifersong*, we made it clear that a party seeking to vacate a default judgment under Rule 60(b)(1) must demonstrate first and foremost that the default did not result from his culpable conduct. That burden may be carried, we said, only by meeting the requirements of Rule 60(b)(1), that is, by "demonstrat[ing] that his default was the product of mistake, inadvertence, surprise, or excusable neglect." *Waifersong*, 976 F.2d at 292. Only if the moving party makes this showing may the district court proceed to consider the other *United Coin Meter* factors. *Id.* Other cases have affirmed the more stringent inquiry courts must pursue when vacating a default judgment as opposed to an entry of default. *See, e.g., Manufacturers' Indus. Relations Ass'n,* 58 F.3d at 208.

We recognize that the district court did not consider the *United Coin Meter* factors in the order that *Waifersong* requires. Nonetheless, although the court did not consider first whether St. Paul had demonstrated that the default was not due to its culpable conduct, the court's finding on that issue is clearly sufficient to support its considering the other two factors. First, St. Paul demonstrated that its default was not the result of culpable conduct, but of mistake or, at worst, excusable neglect. St. Paul's counsel did not simply ignore the pleading deadlines, but repeatedly checked with the office of the district court clerk to determine whether service had been effected upon St. Paul and mistakenly relied upon the information obtained from the clerk. Neither St. Paul nor its counsel was willful in failing to respond timely, and the failure to file an answer timely resulted from an honest mistake. *See United Coin Meter Co., Inc.*, 705 F.2d at 845 (internal quotations omitted) ("Where default results from an honest mistake rather than willful misconduct, carelessness or negligence there is especial need to apply Rule 60(b) liberally."). Second, as we shall develop more fully below, St. Paul had a meritorious defense. And third, Abt was not prejudiced by the vacation of the default judgment. St. Paul moved to vacate this judgment immediately upon discovering the default, and that motion was filed less than 30 days after the date the answer to the complaint was due. We have often reiterated the principle that "trials on the merits are favored in federal courts," *id.* at 846, and that "any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." *Id.* (internal quotations and citations omitted) (quoting *Rooks v. Am. Brass Co.*, 263 F.2d 166, 169 (6th Cir. 1959)). We have therefore held that "mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment." *Id.*

In fact, Abt's arguments are somewhat disingenuous. As the district court pointed out, Abt's attorneys had been in frequent touch with St. Paul's attorneys prior to the initiation of this suit, but elected not to notify them of the filing of the