van Gestel, J.
This matter comes before the Court on cross requests for summary judgment pursuant to Mass.R.Civ.P. Rule 56. The plaintiff, TexStyle, Inc. (“TexStyle"), seeks partial summary judgment as to liability on Count III of its complaint, or, in the alternative, on Counts I and II thereof. The defendants Liberty Insurance Corp. (“LIC”) and Liberty Mutual Insurance Co. (“LMI”), which will here collectively be called “Liberty,” have filed a memorandum of law in *186 opposition to TexStyle’s motion “and in support of the defendants’ cross-motion for summary judgment.” No such cross motion appears on the docket or in the papers in this case. Nevertheless, the Court can, and will, grant summary judgment relief against the moving party — here, TexStyle — if appropriate. See Mass.R.Civ.P. Rule 56(c), last sentence.

BACKGROUND

This is an insurance coverage case, involving issues relating to the duty to defend and the duty to indemnify TexStyle on a commercial lines package policy that included general liability coverage issued by LIC and an umbrella policy issued by LMI. It is the “advertising injury” coverage that is in issue.
The parties agree that the substantive law to be applied to this case is that of the State of Ohio. The Court accepts and agrees with that conclusion.
On October 3, 1997, TexStyle, among others, was sued in the United States District Court for the Southern District of New York by Creative Window Fashions, Inc. (“CWF”). The first claim for relief charged TexStyle, and others, with copyright infringement. A paragraph of the Count in the complaint on the copyright issue reads as follows:
By reason of all of the foregoing, defendants have, individually and collectively in concert, infringed CWF’s copyright in and to the Tulip Designs, and threaten to further continue to infringe the same by, inter alia, manufacturing, offering for sale and selling infringing Products which are virtually identical to CWF’s Tulip Design Products without the authorization or consent of the plaintiff and with actual and/or constructive knowledge of and/or with willful and deliberate disregard for plaintiffs exclusive ownership of and rights in and to Tulip Design, including CWF’s rights under the Copyright Act.
(Emphasis added, except for “inter alia.”)
At the time of the suit against TexStyle, it had the LIC general liability coverage and the umbrella policy issued by LMI, and TexStyle sought defense and indemnification from the Liberty companies.
Among the coverage provided in the LIC policy was that for “ Advertising Injury’ caused by an offense committed in the course of advertising [TexStyle’s] goods, products or services.”
The “DEFINITIONS” section of the LIC policy included the following:
“Advertising injury” means injury arising out of paid announcements in the print or broadcast media resulting in one or more of the following offenses:
d. Infringement of copyright, title or slogan.
The LMI umbrella policy also covered advertising injury and defined advertising injury in the exact same language.
In a “Business Insurance Proposal Prepared for Tex-Style, Inc.," dated January 25, 1997, from Liberty Mutual Insurance Co., one of the “Features” was “Advertising injury.” Under a heading called “Result” the proposal stated the following:
Provides coverage for exposures such as unfair competition, piracy, and limited copyright infringement, arising out of your advertising, promotional, or publicity activities.
The underlying complaint in the suit brought by CWF against TexStyle, and others, charged that Tex-Style copied CWF’s Tulip Design products and sold them to K-Mart Corporation in violation of CWF’s copyright. The advertising for the allegedly infringing TexStyle products consisted, for the most part, of flyers or stuffers issued by K-Mart and inserted in daily and weekly newspapers. TexStyle paid for some significant portion of K-Mart’s advertising efforts. TexStyle itself, however, had no “paid announcements in the print or broadcast media.”
TexStyle first heard about CWF’s allegations of copyright infringement by a letter from CWF’s counsel dated May 28, 1997. At this time, TexStyle had not received the Liberty policies.[1]
The Liberty companies denied coverage for the CWF claims. The letter from Liberty, In pertinent part, reads as follows:
The YP [LIC] policy includes the Personal and Advertising Injury Liability Endorsement. This form includes coverage for damages because of “personal injury,” defined in relevant part to include injury to an organization’s intangible property arising out of certain enumerated offenses committed during the policy period. The TH [LMI] policy includes the same coverage. The complaint alleges no covered offenses.
The YP’s Personal and Advertising Injury form defines “advertising injury” to include “injury arising out of paid announcements in the print or broadcast media resulting in .. . copyright infringement.” Under Endorsement No. 8 on the TH policy, that policy covers “advertising injury” under the same definition. Those definitions require a causal connection between advertising and the alleged injuries. The complaint alleges injury caused by manufacture and sale of an infringing product, not advertisements. The mere fact that the infringing products were depicted in advertisements does not supply the required causal connection.
Count III of TexStyles’s complaint alleges a breach of the Liberty insurance contracts. Counts I and II allege misrepresentation in Liberty’s marketing proposal regarding the reach and extent of coverage for advertising injury.
The complaint contains an allegation that the underlying CWF suit has been settled. The details of the settlement, however, are not set forth, and have not *187 otherwise been provided to the Court. Consequently, the Court does not know whether the issue of indemnity, separate from the issue of defense, has been resolved. In other words, if the CWF suit has been resolved, was there a determination that there were liability and damages that fell within the definition of “advertising injury?" If so, the decision here on the obligation to defend will also resolve the issue of indemnification. If not, there may still be a duty to defend, but there may be no duty to indemnify.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, there are dueling motions or contentions, such that both the TexStyle and the Liberty companies, although for quite different reasons, argue that there are no material facts in dispute and their respective motions or contentions should be allowed. TexStyle claims that the Court can, and should, rule in its favor, based solely upon an interpretation of the policy language and the setting in which it exists. The Liberty companies make the same argument, but leading to the opposite conclusion.
The interpretation of an unambiguous insurance agreement is an issue of law for the Court. Lumbermans Mut. Cas. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). Policy language must be construed in its usual and ordinary sense. 116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 433 Mass. 373, 376 (2001); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). A policy’s provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co., at 381. The mere fact that parties disagree on the proper construction of policy language, however, does not necessarily establish ambiguity. Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
When an element of ambiguity does appear in a policy, the Court considers the entire instrument and the general scheme it reveals to determine the significance and meaning of the ambiguous terms. MacDonald v. Gough, 326 Mass. 93, 96 (1950). “The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). The Court must act in a way to give effect to the agreement as a rational business instrument in order to carry out the intent of the parties. Starr v. Fordham, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the Court except insofar as it may turn on facts in genuine dispute. Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999).
Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written contract. City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999).
As noted in the Background section, the substantive law that applies here is the law of the State of Ohio. One decision by the Ohio Supreme Court, City of Willoughby Hills v. Cincinnati Insurance Company, 9 Ohio St.3d 177 (1984), sets the tone at p. 180.
It follows that the pleadings alone may not provide sufficient factual information to determine whether the insurer has an obligation to defend the insured. It remains true that where the pleadings unequivocally bring the action within the coverage afforded by the policy, the duty to defend will attach . . . However, where the insurer’s duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept defense of the claim. Thus, the “scope of the allegations” may encompass matters well outside the four corners of the pleadings.
In a decision filed on March 18, 2002, the United States Court of Appeals for the Sixth Circuit had the following to say about the Willoughby Hills decision:
In Willoughby Hills the Supreme Court of Ohio addressed the changes wrought by Ohio's use of notice-pleading and expanded upon the earlier rule that a duty to defend may arise solely from the pleadings. Since under notice pleading the duty to defend could arise at some point subsequent to the filing of the complaint, the court adopted the rule that when the pleadings “state a claim which is potentially or arguably within the policy coverage . . . the insurer must accept the defense of the claim” . . . We agree that Willoughby Hills controls here, and we think that case requires that we determine from the plain meaning of the contract terms whether the occurrence is arguably covered by the insurance contract.
In Ohio, normal contract rules apply to the interpretation of insurance contracts . . . The court determines whether contract terms are ambiguous. A term is ambiguous if it is reasonably susceptible of more than one meaning ... If the terms of the contract are unambiguous the court determines the meaning of the contract. . . The court is to give the *188 terms of the contract their plain and natural meaning.
Weiss v. St. Paul Fire and Marine Insurance Company, 283 F.3d 790, 796 (6th Cir. 2002).
In a way that is instructive here, the Weiss court went on to find that there was no duty to defend a patent infringement claim under an advertising injury clause because the insurer’s policies did not cover claims for patent infringement. In essence, the Sixth Circuit held that patent infringement was not arguably covered as an advertising injury, citing to its own decision in Herman Miller, Inc. v. Travelers Indemn. Co., 162 F.3d 454 (6th Cir. 1998), where it "concluded that since the policy specifically covered copyright infringement as an advertising injury, the omission of any reference to patent infringement as advertising injury was an indication of the parties’ intent.” Id. at 455.
Here, copyright infringement is specifically included in the Liberty policies as a limited form of advertising injury, thus evidencing the parties’ intent that it — unlike patent infringement in Herman Miller— was to be included, at least to some extent, as an advertising injury.
The Liberty companies argue strongly that there was no allegation of injury from paid announcements in the print or broadcast media resulting in copyright infringement. Following the lead in Willoughby Hills, as approved most recently in Weiss, this Court disagrees.
As quoted above on p. 2 of the Background section, TexStyle was charged with acting “collectively in concert” with others, including K-Mart, in infringing CWF’s copyright in the Tulip Designs by, among other things, “offering for sale” infringing products. Outside the language of the complaint — which language itself is entitled to a broad reading — the Liberty companies were advised that the allegedly infringing Tulip Design products were advertised by K-Mart in stuffers in newspapers. The Liberty companies were also informed that this advertising activity — which was certainly paid announcements in the print media — was paid for, at least in part, by TexStyle; and CWF, in its complaint, alleged that TexStyle and K-Mart acted “collectively in concert.” As this Court reads the appropriate Ohio law, the complaint and other information provided to the Liberty companies seems to present a situation where the obligation to defend under the advertising injury clause is at least — if not more so — arguably extant.
As noted above, since the Court does not know the details of the outcome of the underlying CWF case against TexStyle it is unable to assess whether the Liberty companies have a duty to indemnify TexStyle as well.
Also, given the conclusion reached here on Count III of the complaint', the Court declines to plumb the depths of the misrepresentation claims in Count I and II.

ORDER

For the foregoing reasons, the plaintiffs motion for partial summary judgment on Count III on liability issues is ALLOWED to the extent of determining that the defendants have, or had, a duty to defend TexStyle against the CWF case. Otherwise, all of the remainder of the plaintiffs motion and the defendants’ contentions are DENIED.

There are no allegations that TexStyle improperly delayed in notifying the Liberty companies of the CWF claims.