In re Harry/Shirley **BRADBURY**,
Debtor.

**Elizabeth Vaughan, Trustee Plaintiff,**

v.

**Mortgage Lenders Network, Defendant.**

**No. 01–3191.**

United States Bankruptcy Court,
N.D. Ohio.

Aug. 21, 2003.

David A. Freeburg, Cleveland, OH, for Defendant.

John P. Gustafson, Toledo, OH, for Plaintiff.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Amended Motion of the Defendant, Mortgage Lenders Network, for relief from judgment. This matter arises from an Amended default judgment entered against the Defendant, wherein the mortgage interest held by the Defendant in the Debtor's property was avoided pursuant to the Plaintiff/Trustee's strong-arm powers under 11 U.S.C. § 544.

On the issue as to whether this default judgment should be set aside, the Court, at the conclusion of the hearing held on this matter, afforded the Parties the opportunity to submit further briefs in support of their respective positions. However, within the time frame set by the Court, no postbriefs were submitted; therefore, the relief sought by the Defendant's Motion will be decided based solely upon those prior briefs filed by the Parties, as well as those arguments made by the Parties at the hearing held on this matter. Based upon a review of these arguments, together with the evidence presented in this case, the Court, for the reasons that will now be explained, finds that the Defendant's Motion should be Denied; accordingly, this Court's entry of an amended default judgment in the Plaintiff's favor will not be disturbed.

The relevant facts of this case, against which there is no factual dispute, are best set forth in a time-line fashion.

On October 26, 2000, the Debtors filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Listed in the Debtors' petition were two mortgage interests in their residence, with the Defendant being the primary mortgage holder. On March 6, 2001, the Debtors received a discharge.

On August 14, 2001, the Plaintiff, in her capacity as trustee, filed a Complaint to avoid the mortgage interest held by the Defendant in the Debtor's property. Timely notice of this adversary proceeding was then provided to the statutory agent designated by the Defendant to accept service of process. The agent's records show that notice was then sent to the Defendant; however, for reasons which are not entirely known, the Defendant never received actual notice of the Plaintiff's Complaint. As a result, the Defendant did not file an answer; nor did the Defendant appear at a Pre-Trial held in this matter which was conducted on October 26, 2001.

On November 13, 2001, the Plaintiff filed a Motion for default judgment. A hearing on this Motion was then set for December 18, 2001. Notice of this hearing was again provided to the Defendant's statutory agent, however, no representative on behalf of the Defendant appeared at the hearing. As a result, on December 18, 2001, the Court granted the Plaintiff's Motion for default. Three days later, an order was entered by the Court wherein it was set forth that any mortgage interest the Defendant held against the Debtors' residence was void; notice thereof was again sent to the Defendant's statutory agent. On January 16, 2002, this judgment was modified based upon a Motion filed by the Plaintiff for a corrective amendment.

In the months subsequent to the entry of the default judgment, the Plaintiff received at least three calls from a representative of the Defendant. At least one of these calls took place on August 8, 2002.

On May 12, 2003, the Defendant filed the instant Motion for Relief from Judgment under Bankruptcy Rule 9024.

## LEGAL DISCUSSION

The matter underlying the Defendant's Motion for Relief Judgment involves an action to determine the validity, extent, or priority of liens. As such, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(K) & 1334.

The Defendant's Motion to set aside the Plaintiff's default judgment is brought pursuant to Bankruptcy Rule 9024. As it pertains thereto, the Defendant specifically cites to that part of this Rule which provides for relief from judgment when, on the part of the party against whom the judgment was rendered, there exists "excusable neglect." The particular portion of Rule 9024 governing this basis for relief is contained in paragraph (b)(1) which, in pertinent part, states, "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for . . . excusable neglect[.]" In order to maintain an action based upon "excusable neglect," however, the action must be commenced within one year, the actual language of the Rule providing that such "motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." With respect to this time limitation, Bankruptcy Rule 9006(b)(2) provides that the "court may not enlarge the time for taking action under Rule[ ] . . . 9024." Similarly, this time limitation has been held to be jurisdictional, and thus may not even be enlarged even for equitable reasons. *Wesco Products Co. v. Alloy Automotive Co.*, 880 F.2d 981, 985 (7th Cir. 1989).

This case, the Defendant, having filed its Motion for Relief from Judgment approximately 16 months after the amended default judgment was entered, clearly falls outside the one year time limitation imposed by Bankruptcy Rule 9024(b). Notwithstanding, the Defendant, while neither disputing the lateness of its Motion or the inability of a court to extend the one year period, argues that the one year limitation on bringing an action to set aside a judgment is inapplicable in this case. In making this argument, the Defendant relies on the introductory text of Bankruptcy Rule 9024, specifically calling this Court's attention to that portion of the Rule which provides, ". . . a motion . . . for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b) . . . [.]"

In arguing for the applicability of this introductory paragraph, it is the Defendant's position that as long as a proceeding has a direct impact on a creditor's claim, the introductory paragraph of Bankruptcy Rule 9024 will apply so as to negate the applicability of the one year time limit set forth in paragraph (b) of the Rule. Put another way, the Defendant argues that despite the fact that the underlying action in this instant case involved the validity of a lien, and not the reconsideration of a claim, this is not an impediment because any reconsideration as to the validity of its lien will directly effects is claim.

From strictly a cause and effect standpoint, the Defendant's position is correct: a determination as to the validity of its lien will have a direct impact on its claim against the Debtors' estate—particularly, the status of the Defendant's claim as either secured or unsecured. Nevertheless, while such a correlation is important, it must weighed against other considerations

which, from an interpretation standpoint, do not support the Defendant's position.

■■■ First, one of the primary functions of the bankruptcy process is to allow for the equitable distribution of estate assets. *See, e.g., In re Aer–Aerotron,* 172 B.R. 202 (Bankr.E.D.N.C.1994). As a result, many different types of actions have a direct impact on the claims process—motions for relief from stay and abandonment, objections to exemptions and motions for turnover, to name just a few. Thus, to accept the Defendant's argument would, in large part, cause the exception, as set forth in the introductory paragraph of Bankruptcy Rule 9024, to subsume the general rule that actions to set aside a judgment based upon "excusable neglect" must be brought within one year. This, in turn, clearly violates the basic principle of statutory construction that the interpretation of statutes and rules of procedure should be done in a manner so that no part is rendered inoperative, superfluous, void or insignificant. *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

In addition, the interpretation of Bankruptcy Rule 9024 espoused by the Defendant ignores the separate treatment which both the Bankruptcy Code and Rules afford to the claim's allowance process as compared to those actions brought to avoid liens. First, and most obvious, the claim allowance process is statutorily provided for in § 501 and § 502 of the Bankruptcy Code, while an action to avoid a lien, such as that brought by the Plaintiff, is set forth in § 544. Narrowing in even further, paragraph (j) of § 502 specifically sets forth, in language almost identical to the introductory paragraph of Bankruptcy Rule 9024, the conditions under which a claim may be reconsidered; no comparable provision, however, exists with respect to

lien avoidance issues under § 544. More differences exist.

For example, an action to avoid a lien under § 544 is designated under Bankruptcy Rule 7001(2) as a adversary proceeding, and therefore is governed by Part 7 (7000 series) of the Bankruptcy Rules. Dissimilarly, the allowance or disallowance of claims is governed by Part 3 (3000 series) of the Bankruptcy Rules. In addition, the separate nature of the two types of actions is also of jurisdictional significance. In particular, 28 U.S.C. § 157, which sets forth those types of action over which this Court has jurisdiction, delineates between determinations concerning the validity of liens, § 157(b)(2)(K), and matters concerning the allowance of disallowance of claims against the estate, § 157(b)(2)(B).

Thus, for the above reasons, the Court declines to accept the Defendant's invitation to extend the reach of the term "claim," as contained in the introductory paragraph of Bankruptcy Rule 9024, so as to negate the one year time limitation imposed for bringing actions to avoid judgments based upon the standard of "excusable neglect." Nevertheless, even if, for argumentative sake, the one year time limitation set forth in paragraph (b) of Bankruptcy Rule 9024 was not applicable, the circumstances presented in this case do no support a finding of "excusable neglect." The following explains why.

■■■ The standard for "excusable neglect" was addressed by the Supreme Court of the United States in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 398, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993). Although in *Pioneer,* the Supreme Court addressed the meaning of this term in the context of an action to enlarge the time for computing deadlines under Bankruptcy Rule 9006(b), this standard is equally applicable in an

action to set aside a judgment under Federal Rule of Procedure 60(b), and thus by implication Bankruptcy Rule 9024. As explained in *In re O'Brien Environmental Energy, Inc.*:

> The phrase 'excusable neglect' appears not only in Rule 9006(b) but in Federal Rules of Civil Procedure 6(b), 13(f), and 60(b), Federal Rule of Criminal Procedure 45(b), and Federal Rule of Appellate Procedure 4(a). The Supreme Court referred to each of these rules in construing the "excusable neglect" analysis in Pioneer. Pioneer, therefore, is commonly understood to provide guidance not just with regard to Rule 9006, but in other bankruptcy contexts discussing the issue of excusable neglect (citations omitted). Thus, the Pioneer analysis applies in the context of a Rule 60(b) motion, as in this case.

188 F.3d 116, 126, n. 7 (3rd Cir.1999).

■■■ In *Pioneer*, the Supreme Court held that the determination of whether a party's neglect was "excusable" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. Factors to consider in this regard, are "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* In the specific context of a default judgment, the Sixth Circuit has held that a party seeking to set aside the judgment must establish, at a minimum, that with respect to the entry of the default judgment, no culpable conduct exists on their part. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir.2002). Thereafter, if it is found that no culpable conduct exists, the Sixth Circuit held that a court should consider, (1)

whether the opposing party would be prejudiced, and (2) whether the proponent had a meritorious claim or defense. *Id.*

As it concerns its asserted lack of culpable conduct, the Defendant supports its position by citing to the Sixth Circuit's holding in the case of *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 399 (6th Cir.1987), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Like the facts presented in this case, the *INVST Fin. Group* decision also involved a 16 month delay in a party taking an action prescribed by the rules of procedure; although, unlike the instant case, *INVST Fin. Group* involved a delay in the filing of an answer after which time a default judgment was entered. *Id.* at 395–96. In discussing the standard for culpable conduct, the Court in *INVST Fin. Group* stated that "to be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.* at 399.

As applied to this case, it is the Defendant's position that its conduct cannot be considered culpable given that it did not timely receive actual notice of the Plaintiff's lawsuit on account of an internal communication problem. Specifically, an affidavit provided to the Court stated that although the records of the Defendant's statutory agent show that the Plaintiff's Complaint was forwarded to the Defendant, there is no actual record of its receipt. (Doc. # 14, Ex. B). The shortfall with this explanation, however, is that it only goes to the issue of wrongful intent; it does not satisfactorily explain how the Defendant's conduct fails to constitute a reckless disregard for the judicial process. Especially disconcerting in this regard is that numerous notices concerning the Plaintiff's lawsuit were provided to the

Defendant over a significant period of time—e.g., notice of the lawsuit itself, plus multiple notices concerning the default judgment. Yet, despite these numerous notices, the relationship between the Defendant and its agent for service of process did not lead to any response on the part of the Defendant. Thus, at the very least the Defendant's position plainly acknowledges a major flaw in its internal procedure, a state of affairs which is simply not acceptable for a mortgage company, such as the Defendant, whose business, by its very nature, will entail its involvement in legal actions.

However, even if this Court were to set aside the above concern, the supposed lack of any culpable conduct simply falls apart given this one particular fact: in August of 2002, a representative of the Defendant, empowered with at least the apparent authority to address legal matters, was in direct contact with the Plaintiff concerning the default judgment. Thus, at this time the Defendant clearly had actual knowledge of the Plaintiff's lawsuit; yet, despite this knowledge, the Defendant did not take any action to address the Plaintiff's default judgment until May 12, 2003, a full nine months later. Given such a significant delay, the Court simply finds it illogical to try to fit the square peg of an entity such as the Defendant who clearly slept on their rights, into the round hole of the concept of "excusable neglect." In fact, as pointed out by the Supreme Court in *Pioneer*, "excusable" is the requirement that "will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under" the Bankruptcy Rules. *Id.* at 395, 113 S.Ct. at 1498.

Additionally, it is observed that the facts as presented in this case are completely inapposite to the circumstances present in *INVST Fin. Group* which the Defendant

utilized in support of its position that "excusable neglect" exists in this case. To the point, in overturning the district court's decision and finding the defendant's delay excusable, the Sixth Circuit held that a 16 month delay was not as egregious as it first appeared, stating, "[t]his is not a case in which intransigence of the parties has made a default judgment appropriate. Instead, the procedural difficulties which led to the default judgment resulted from a misunderstanding between the attorneys involved." *Id.* at 400. In making this statement, however, the Court in *INVST Fin. Group* was careful to refer to these mitigating factors: (1) the presence of an agreement between the parties granting an indefinite extension of time to file an answer; (2) ambiguity in the attempted revocation of that extension; and (3) a lack of action on the part of the plaintiff after their purported revocation of the extension of time to answer. *Id.* Thus, in complete contrast to the situation presented in this case, the defendant in *INVST Fin. Group* was at all time attentive to their duties, but because of a misunderstanding did not comply with those requirements set forth in the federal rules of procedure.

It is also significant in this case that, in noncompliance with those requirements outlined by the Sixth Circuit in *Weiss v. St. Paul Fire & Marine Ins. Co.*, the Plaintiff would be clearly prejudiced if this Court were to grant the Defendant relief from judgment. This prejudice stems from two legitimate concerns raised by the Plaintiff. First, the Plaintiff may not have incurred her time and expense in selling the property had the default judgment not been obtained. Second, the Plaintiff had agreed not to pursue her avoidance action against the junior mortgage based upon the consideration that it was not worth the risk and expenses given that the first

mortgage, through the instant default judgment, had already been avoided.

 Accordingly, for all of the above reasons, the Court declines to grant the Defendant's request for relief from judgment under Bankruptcy Rule 9024. Although this decision may go contrary to the general rule that cases should be decided based upon their merits, it does conform to the equally important policy in favor of preserving the finality of judgments, even if they are rendered by default. *See, e.g., Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401–02 (5th Cir.1981) (discussing Rule 60(b) balancing of the desire to preserve the finality of judgments with the desire that judgments reflect the merits of the case). Expanding further on the latter statement, it is the Court's judgment that there has to come a point where procedure prevails, otherwise the rules of procedure would not be actually be rules, but instead would merely become guidelines or suggestions.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the Defendant, Mortgage Lenders Network, for Relief from Judgment under Bankruptcy Rule 9024, be, and is hereby, DENIED.