**Alan G. DICE, Plaintiff–Appellant,**

v.

**GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY, Defendant–Appellee.**

No. 03–3526.

United States Court of Appeals, Sixth Circuit.

March 18, 2004.

Before BATCHELDER and GIBBONS, Circuit Judges; and COHN, District Judge.*

*ORDER*

Alan G. Dice, proceeding through counsel, appeals a magistrate judge's judgment dismissing his diversity declaratory judgment action. *See* 28 U.S.C. § 1332. The parties have waived oral argument and this panel unanimously agrees that oral

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

argument is not needed in this case. Fed. R.App. P. 34(a).

On January 4, 2002, Dice filed a complaint against General Electric Capital Assurance Company (GECA) in the Montgomery County, Ohio, Court of Common Pleas. Dice alleged that his wife, Brenda J. Dice, died on February 12, 2000. At the time of her death, Brenda's life was insured pursuant to a life insurance policy issued by GECA and Dice was the beneficiary of the life insurance benefits. Following Brenda's death, Dice submitted a claim for life insurance benefits, which was denied by GECA. As a result of GECA's denial of benefits, Dice filed the instant action seeking a judgment declaring his entitlement to the life insurance benefits from the GECA policy.

GECA removed the action to federal court pursuant to 28 U.S.C. § 1441 on the bases of diversity of citizenship and amount in controversy found in § 1332. Both parties consented to have a magistrate judge exercise jurisdiction over the action in accordance with the provisions of 28 U.S.C. § 636(c). Thereafter, both parties filed cross motions for summary judgment. The magistrate judge granted GECA's motion, denied Dice's motion, and dismissed the case. Dice has filed a timely appeal.

We review the magistrate judge's grant of summary judgment de novo. *Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir.2003). Summary judgment is appropriate when the evidence presented shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)).

When federal jurisdiction is based upon diversity of citizenship, as here, we must apply the law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Stalbosky v. Belew,* 205 F.3d 890, 893 (6th Cir.2000). Under Ohio law, "[w]hen the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible ... to resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (Ohio 1984); *see also Weiss v. St. Paul Fire & Marine Ins. Co.,* 283 F.3d 790, 796 (6th Cir.2002); *Park–Ohio Indus., Inc. v. Home Indem. Co.,* 975 F.2d 1215, 1218 (6th Cir.1992). However, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988); *see also Munchick v. Fid. & Cas. Co.,* 2 Ohio St.2d 303, 209 N.E.2d 167, 169–70 (1965).

Upon review, we conclude that the magistrate judge properly granted summary judgment in favor of GECA. The life insurance policy at issue in this case contains an exclusion, which states that coverage is not provided "for any loss caused by or resulting from ... (3) alcohol intoxication or being under the influence of any narcotic, drug or sedative, unless administered on the advice of a physician." In this case, the coroner determined that Brenda's death was caused by "[a]cute multiple drug intoxication" and that "oxycodone, cocaine, alprazolam, and diazepam" were the contributing drugs.

At the time of her death, Brenda's treating physician had prescribed Oxycontin for pain. The record indicates that Brenda was prescribed Oxycontin in forty milligram tablets and instructed to consume forty to eighty milligrams every eight hours. Pursuant to her physician's instructions, the maximum dose of Oxycontin that Brenda should have ingested within a twenty-four-hour period would have been

"6, 40 mg. tablets" or 240 milligrams. According the policy language its plain and ordinary meaning, Brenda was required to give herself the prescribed medication pursuant to the recommendation of her physician. However, the post-mortem toxicology laboratory report indicated that Brenda had the equivalent of 300 milligrams of Oxycontin in her blood, which is more than the prescribed dosage. Thus, Brenda ingested more Oxycontin than her physician had prescribed or advised that she ingest and such ingestion, either alone or in combination with some of the other drugs found in her blood, caused her death. Under these circumstances, Oxycontin was not administered on the advice of Brenda's physician. Because Brenda's death resulted from her being under the influence of at least one drug that was not administered on the advice of a physician, the policy exclusion is applicable and Dice is not entitled to the life insurance benefits under the GECA policy. Dice's arguments on appeal do not compel a different result.

Accordingly, we affirm the judgment of the magistrate judge.